UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                             :

FRANK MICHOLLE, Individually and on   :
Behalf of All Others Similarly Situated,   :
                             :
                      Plaintiff,   :         17-CV-210 (VSB)
                             :
        - against -          :
                             :
                             :

OPHTHOTECH CORPORATION, DAVID R.  :
GUYER, MICHAEL G. ATIEH, GLENN P.  :
SBLENDORIO, and SAMIR PATEL,   :
                             :
                 Defendants.  :
                             :
-----------------------------------------------------------X
                             :

MARK WASSON, Individually and on Behalf  :
of All Others Similarly Situated,   :
                             :
                      Plaintiff,   :         17-CV-1758 (VSB)
                             :
        - against -          :       **OPINION & ORDER**
                             :

OPHTHOTECH CORPORATION, DAVID R.  :
GUYER, MICHAEL G. ATIEH, GLENN P.  :
SBLENDORIO, and SAMIR PATEL,   :
                             :
                 Defendants.  :
                             :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/13/2018

Appearances:

Shannon Lee Hopkins
Levi & Korsinsky, LLP
New York, New York
*Counsel for Plaintiff*

Joshua Wolf Ruthizer
Wolf Popper LLP
New York, New York
*Counsel for Movant David Jenkins*

Lesley Frank Portnoy
Glancy Prongay & Murray LLP
New York, New York
*Counsel for Movant Colin Kirk, Dora Jordan, and Sonia Carrero-Pomeroy*

Thomas Livezey Laughlin, IV
Scott+Scott, LLP
New York, New York
*Counsel for Movant City of Bristol Pension Fund, Brandon Suedekum, Ashok Dalal, Sergio Albonico, and Mayur Shah*

William H. Narwold
Motley Rice LLC
Hartford, Connecticut
*Counsel for Movant Oppenheim Asset Management Services S.à.r.l.*

Richard William Gonnello
Faruqi & Faruqi, LLP
New York, New York
*Counsel for Movant Frank Magiera*

Jeremy Alan Lieberman
Pomerantz LLP
New York, New York
*Counsel for Movant Xing Wang and Genghong Zhao*

David Avi Rosenfeld
Robbins Geller Rudman & Dowd LLP
Melville, New York
*Counsel for Movant Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada*

Fraser Lee Hunter, Jr.
Jeremy Todd Adler
Michael G. Bongiorno
Wilmer Cutler Pickering Hale & Dorr LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs bring two securities fraud class action lawsuits against Ophthotech Corporation

("Ophthotech") and several of its officers and directors. These actions (collectively, the

"Ophthotech Actions") allege that Ophthotech and its officers and directors violated Sections

10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as the U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act.  (Micholle Compl. ¶ 9; Wasson Compl. ¶ 9.)[1]

Before me are motions from eight movants seeking (1) consolidation of the actions, (2) appointment of lead plaintiff, and (3) approval of lead counsel.  Because the Ophthotech Actions set forth substantially identical questions of law and fact, movants' motions to consolidate are GRANTED.  Because movant Sheet Metal Workers' Pension Plan of Southern California, Arizona, and Nevada ("Pension Plan") has a large financial interest in the litigation, at this stage of the litigation appears to fulfill the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, and has chosen counsel with substantial experience in securities litigation and securities class actions, the Pension Plan's motion to be appointed lead plaintiff and for approval of its selection of lead counsel is GRANTED.  The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

## I.  <u>Background and Procedural History</u>[2]

### A.  *Complaints*

On January 11, 2017, Plaintiff Frank Micholle ("Micholle") filed a class action complaint (the "Micholle Complaint") against Ophthotech, as well as its Chief Executive Officer David R.

---

[1] "Micholle Compl." refers to Plaintiff Frank Micholle's complaint filed January 11, 2017 in case 17-CV-210, (Doc. 1), and "Wasson Compl." refers to Plaintiff Mark Wasson's complaint filed March 9, 2017 in case 17-CV-1758, (Doc. 1).  On May 30, 2017, Plaintiff Edward Etelmendorf brought a separate shareholder derivative action, case 17-CV-4042, on behalf of Ophthotech's shareholders against several of Ophthotech's directors, seeking to remedy the directors' breach of their fiduciary duties (the "Etelmendorf Action").  (*See* Etelmendorf Compl.)  I accepted 17-CV-1758 and 17-CV-4042 as related to 17-CV-210 on March 10, 2017 and June 1, 2017, respectively.  Prior to Defendants filing an answer in the Etelmendorf Action, on October 17, 2017, Etelmendorf filed a stipulation dismissing his action without prejudice pursuant to Federal Rule of Civil Procedure 41.  (Doc. 13.)  Thus, I will not consider any of the claims in the Etelmendorf Action, and will only consider the Ophthotech Actions for the purpose of the instant Opinion & Order.  "Etelmendorf Compl." refers to Plaintiff Edward Etelmendorf's complaint filed May 30, 2017.  (Doc. 1.)

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

Guyer, former Chief Financial and Business Officer Michael G. Atieh, current Chief Financial and Business Officer Glenn P. Sblendorio, and President and Vice Chairman of the Board of Directors Samir Patel (collectively, "Individual Defendants"), alleging that Ophthotech and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by misrepresenting the results of its studies for Fovista, a drug being tested to treat a retinal disorder called age-related macular degeneration. (Micholle Compl. ¶¶ 2–6, 14–18.) The essence of Micholle's claim is that, between May 11, 2015 and December 12, 2016 (the "Class Period"), Ophthotech mischaracterized both the results of Fovista's efficacy and the results of the drug's phase three trial. (*Id.* ¶¶ 33–41.) Micholle claims that, as a result of Ophthotech's positive characterizations of the phase one and phase two clinical trials, the market price of Ophthotech stock was "artificially inflated." (*Id.* ¶ 67.) This, in turn, caused Micholle and others who purchased Ophthotech securities during the Class Period (the "Class") substantial losses when Ophthotech issued a press release on December 12, 2016, announcing that the results of the phase three trial "had failed to achieve its primary endpoint." (*Id.* ¶ 42.)

On January 11, 2017, the same day that he filed his complaint, Micholle published a notice of the complaint on Globe Newswire in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(A)(i). (*See* Stolper Decl. Ex. A; Portnoy Decl. Ex. A.)[3] The notice was addressed to "[a]ll persons or entities who purchased or otherwise acquired shares of Ophthotech . . . between May 11, 2015 and December 12, 2016" and detailed the claims in the Micholle Complaint. (Stolper Decl. Ex. A; Portnoy Decl. Ex. A.)

---

[3] "Stolper Decl." refers to the Declaration of Andrew Stolper in Support of David Jenkins's Motion to Appoint Lead Plaintiff, filed March 13, 2017. (Doc. 11.) "Portnoy Decl." refers to Declaration of Lesley F. Portnoy in Support of Colin Kirk, Dora Jordan, and Sonia Carrero-Pomeroy's Motion to Appoint Counsel, filed March 13, 2017. (Doc. 14.)

It informed the Class that they had until March 13, 2017 to file for appointment as lead plaintiff. (Stolper Decl. Ex. A; Portnoy Decl. Ex. A.)

Several months later, on March 9, 2017, Plaintiff Mark Wasson filed a class action complaint (the "Wasson Complaint") against Defendants. (Wasson Compl. ¶¶ 14–18.) The Wasson Complaint's claims arise out of the same facts and allege the same misrepresentations against Defendants for the period between May 11, 2015 and December 9, 2016. (*Compare* Micholle Compl. ¶¶ 1, 33–41 *with* Wasson Compl. ¶¶ 1, 33–41.)

### B. *Consolidation and Lead Plaintiff Motions*

Since the Micholle Complaint was filed, eight plaintiffs and plaintiff groups have filed motions requesting consolidation of the Ophthotech Actions, appointment of lead plaintiff, and approval of lead counsel. (Docs. 9, 12, 15, 18, 21, 28, 30, 35.)[4]

David Jenkins ("Jenkins") moves to appoint himself as lead plaintiff and for approval of Frank Sims Stolper LLP and Wolf Popper LLP as lead counsel and liaison counsel, respectively. (Doc. 9.) Colin Kirk, Dora Jordan, and Sonia Carrero-Pomeroy (the "Kirk Group") move to appoint themselves as lead plaintiffs and for approval of Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. as co-lead counsel. (Doc. 12.) City of Bristol Pension Fund, Brandon Suedekum, Ashok Dalal, Sergio Albonico, and Mayur Shah (the "Bristol Group") move to appoint themselves as lead plaintiffs and for approval Scott+Scott, Attorneys at Law, LLP and Levi & Korsinsky LLP as co-lead counsel. (Doc. 15.) Oppenheim Asset Management Services S.à.r.l. ("Oppenheim") moves to appoint itself as lead plaintiff and for approval of Motley Rice LLC as lead counsel. (Doc. 18.) Frank Magiera ("Magiera") moves to appoint himself as lead

---

[4] All references to documents in this Section are to the filings made in 17-CV-201, the first-filed of the Ophthotech Actions.

plaintiff and for approval of Faruqi & Faruqi, LLP as lead counsel. (Doc. 21.) Xing Wang and Genghong Zhao ("Wang Group") move to appoint themselves as lead plaintiffs and for approval of Pomerantz LLP and Goldberg Law PC as co-lead counsel. (Doc. 28.) Sheet Metal Workers' Pension Plan of Southern California, Arizona, and Nevada moves to appoint itself as lead plaintiff and for approval of Robbins Geller Rudman & Dowd LLP as lead counsel. (Doc. 30.) Brian Ferber ("Ferber") moves to appoint himself as lead plaintiff and for approval of Gainey McKenna & Egleston as lead counsel. (Doc. 35.) All plaintiffs and plaintiff groups except Magiera, who did not file a motion for consolidation but who does not oppose consolidation, move to consolidate the Ophthotech Actions. (Docs. 9, 12, 15, 18, 28, 30, 35.)

In response to the above-mentioned motions for appointment of lead plaintiff and approval of lead counsel, the Kirk Group, Oppenheim, Ferber, and Magiera filed notices of non-opposition acknowledging that they do not possess the largest financial interest. (*See* Kirk Group Non-Opp. Notice 1; Oppenheim Non-Opp. Notice 1; Ferber Non-Opp. Notice 2; Magiera Non-Opp. Notice 1.)[5] Three of the remaining movants filed oppositions to the competing motions. On March 27, 2017, Jenkins filed an opposition to the Pension Plan, Bristol Group, and Wang Group's motions. (Jenkins Opp.)[6] On the same day, the Pension Plan filed an opposition to all competing motions. (Pension Plan Opp.)[7] Lastly, on March 28, 2017, the Bristol Group

---

[5] "Kirk Group Non-Opp. Notice" refers to the Notice of Non-Opposition by Colin Kirk, Dora Jordan, and Sonia Carrero-Pomeroy to Competing Motions for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Lead Counsel, filed March 16, 2017. (Doc. 34.) "Oppenheim Non-Opp. Notice" refers to the Notice of Oppenheim Asset Management Services S.À.R.L. Concerning its Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of its Selection of Lead Counsel, filed March 27, 2017. (Doc. 38.) "Ferber Non-Opp. Notice" refers to the Notice of Non-Opposition by Movant Ferber to Competing Motions for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Lead Counsel, filed March 27, 2017. (Doc. 39.) "Magiera Non-Opp. Notice" refers to Frank Magiera's Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff, filed March 27, 2017. (Doc. 40.)

[6] "Jenkins Opp." refers to David Jenkins' Memorandum of Law in Further Support of his Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel, filed March 27, 2017. (Doc. 42.)

[7] "Pension Plan Opp." refers to Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada's

filed an opposition to the competing motions. (Bristol Group Opp.)[8] Thereafter, the Wang

Group, Jenkins, the Bristol Group, and the Pension Plan filed replies in support of their motions.

(*See* Wang Group Reply; Jenkins Reply; Bristol Group Reply; Pension Plan Reply.)[9] Defendant

has not taken a position on the merits of these motions.

## II. Discussion

### A. *Consolidation*

#### 1. Applicable Law

Consolidation is a "valuable and important tool of judicial administration." *Consorti v.

Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518

U.S. 1031 (1996). Under Federal Rule of Civil Procedure 42(a), when separate actions before a

court involve a common question of law or fact, a court is empowered to "consolidate the

actions." Fed. R. Civ. P. 42(a)(2). Essentially, Rule 42 is "invoked to expedite trial and

eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'n Int'l Union*, 175

F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted).

It is well-settled that Rule 42 gives a district court broad discretion to consolidate legal

actions sua sponte. *Id.* Indeed, where judicial economy is concerned, a district court will

---

Opposition to Competing Motions for Appointment as Lead Plaintiff, filed March 27, 2017. (Doc. 44.)

[8] "Bristol Group Opp." refers to OPHT Investor Group's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead counsel dated March 27, 2017, but filed on March 28, 2017. (Doc. 46.)

[9] "Wang Group Reply" refers to Reply Memorandum of Points and Authorities in Further Support of Motion of Xing Wang and Genghong Zhao for Consolidation, Appointment as Lead Plaintiffs, and Approval of Counsel, filed April 3, 2017. (Doc. 49.) "Jenkins Reply" refers to Reply Memorandum of Law in Support of David Jenkins' Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed April 3, 2017. (Doc. 50.) "Bristol Group Reply" refers to OPHT Investor Group's Reply Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and in Opposition to the Various Competing Motions filed April 3, 2017. (Doc. 53.) "Pension Plan Reply" refers to Reply Memorandum of Law in Further Support of Sheet Metal Workers' Pension Plan of Southern California, Arizona, and Nevada's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Lead counsel dated April 3, 2017. (Doc. 54.)

generally consolidate actions. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation."); *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("Considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." (quoting *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970))). Further, "consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Devlin*, 175 F.3d at 130 (emphasis and internal quotation marks omitted).

In securities actions in particular, district courts consolidate cases when complaints are based on the same set of public statements and disclosures and there are common questions of law or fact. *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992). Courts also consider whether consolidation would prejudice the defendants. *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004).

### 2. Application

Before me are motions from seven plaintiffs and plaintiff groups requesting consolidation of the Ophthotech Actions. (Docs. 9, 12, 15, 18, 28, 30, 35.) Because the motions for consolidation are unopposed[10] and because the actions are substantially similar, I find that consolidation is warranted.

The Ophthotech Actions involve the same set of plaintiffs and defendants—both are securities class actions on behalf of "all persons who purchased or otherwise acquired Ophthotech securities" between May 2015 and December 2016, (Micholle Compl. ¶ 1; Wasson Compl. ¶ 1), against Ophthotech and Individual Defendants, (Micholle Compl. ¶¶ 14–18;

---

[10] Although Magiera did not file a motion to consolidate, he did not file an objection to consolidation so the motions to consolidate are unopposed.

Wasson Compl. ¶¶ 14–18).  Both Complaints allege that Defendants materially misrepresented the results of Fovista's phase three trial.  (*See* Micholle Compl. ¶¶ 33–41; Wasson Compl. ¶¶ 14–18.)  The two Complaints also seek identical relief under Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated pursuant to the Exchange Act.  (Micholle Compl. ¶¶ 60, 73; Wasson Compl. ¶¶ 60, 73.)  These actions thus implicate the same questions of law, namely whether Ophthotech and the Individual Defendants violated the Exchange Act and SEC Rule 10b-5 through materially misrepresenting the results of its Fovista trial and whether this misrepresentation caused injury to the respective Plaintiffs.

In light of the fact that the motions for consolidation are unopposed, as well as the substantially similar nature of the Ophthotech Actions and the common questions of law and fact arising under these actions, movants' motions for consolidation are granted.

## B. *Appointment of Lead Plaintiff*

### 1. **Applicable Law**

The procedures set forth in the PSLRA, 15 U.S.C. § 78u-4, govern the appointment of lead plaintiff in securities class actions.  The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel."  *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012); *see also* H.R. Rep. No. 104-369, at 32–33 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731–32;  *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998).  Before its enactment, "professional" plaintiffs overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger

stakes." *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)).

Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u-4(a)(3)(B)(iii)(I). Other class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)

### a. Notice and Filing Requirements

As an initial matter, the PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service." *Id.* § 78u-4(a)(3)(A)(i). The notice must inform the purported plaintiff class of the pendency of the action, the claims and purported class period, and the ability to move, within sixty days of the notice, to serve as lead plaintiff of the purported class. *Id.*

Courts strictly adhere to the sixty-day rule, and any motion filed after the sixty-day period will not be considered except under rare circumstances. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (calling the sixty-day deadline a "strict deadline"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397

(S.D.N.Y. 2014) ("Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published.").  If, however, a plaintiff files a timely motion within the sixty-day period but then files an amended motion after the period has elapsed, courts have accepted a motion as timely.  *See, e.g.*, *Khunt*, 102 F. Supp. 3d at 535; *Schulman*, 2003 WL 21415287, at *4 (accepting motions as timely where the motions "were amended motions made by parties who had all already filed timely motions within the 60-day period").  This is especially true when "concerns animating the courts that have rejected untimely consolidations"—such as the concern of unrelated litigants "jockeying for the position of biggest loser"—are not present.  *Khunt*, 102 F. Supp. 3d at 535.

### b.  Largest Financial Interest

#### i.  *Aggregating Financial Interest*

While the PSLRA permits a "person or group of persons" to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I), it does not define "group of persons" or whether these persons must be related, *see In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The PSLRA does not, unfortunately, define what constitutes an appropriate candidate. . . . [T]he Act does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group.").

Courts permit unrelated investors to move for appointment as lead plaintiff, and aggregate their financial interests, on a case-by-case basis.  *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *eSpeed*, 232 F.R.D. at 99. Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class.  *Varghese*, 589 F. Supp. 2d at 392; *see also In re*

*Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("[T]o enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers."). Courts have considered factors such as the existence of a prior relationship, information-sharing between members, prior cooperative efforts, plans for future cooperation, and the sophistication and involvement of the members. *See Varghese*, 589 F. Supp. 2d at 392. Where a court rejects a group of unrelated investors, it may consider the largest shareholder within the group for appointment as lead plaintiff. *Id.* at 394 ("While the Court rejects the aggregated [plaintiff group's] motion as lead plaintiffs, the Court may consider . . . the largest shareholder . . . individually, as if he had moved to be appointed as lead plaintiff alone.").

### ii. *Calculating Financial Interest*

In this District, courts use the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), when determining the party with the largest financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate financial losses suffered. *See, e.g.*, *Reitan*, 68 F. Supp. 3d at 395 (applying the *Lax* test); *Varghese*, 589 F. Supp. 2d at 394–95 (same); *eSpeed*, 232 F.R.D. at 100 (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same). Of the four factors, financial loss is considered the most significant factor. *See Reitan*, 68 F. Supp. 3d at 395; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements." (citation omitted)).

Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *5 & n.6 (S.D.N.Y. Mar. 2, 2007). In securities fraud cases, courts must consider only those losses that a plaintiff incurred *after* a misrepresentation is revealed to the public. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N.Y 2015); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272 (S.D.N.Y. 2015); *see also Comverse*, 2007 WL 680779, at *5 ("[W]here (as here) it is clear from the face of the pleadings that most of [movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage."). Any losses incurred based on "in-and-out" trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered. *See Topping*, 95 F. Supp. 3d at 618 ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include 'losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.'" (quoting *Comverse*, 2007 WL 680779, at *4)). This is consistent with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005), where the Court found that securities actions only provide recoveries for "economic losses that misrepresentations actually cause." Thus, any losses resulting from sales of shares before a company's misconduct is revealed are not considered for the purpose of loss calculation "because those losses cannot be proximately linked to the misconduct at issue." *Alibaba*, 102 F. Supp. 3d at 531 (quoting *Comverse*, 2007 WL 680779, at *4).

### c. Rule 23

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of

the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of a class certification." *eSpeed*, 232 F.R.D. at 102.  The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements.  *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *eSpeed*, 232 F.R.D. at 102.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50.  While the claim need not be identical, it must be substantially similar to the other members' claims.  *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The presumptive lead plaintiff meets this requirement when this plaintiff:  (1) has no conflict of interest with the other members of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. *Reitan*, 68 F. Supp. 3d at 400.

Additionally, courts have a preference for appointing institutional investors as lead plaintiffs. *Id.* at 396. This is consistent with Congress's intent in passing the PSLRA. *See id.*; *Weiss*, 2006 WL 197036, at *2 ("By enacting the PSLRA . . . Congress sought to increase the likelihood that institutional investors will step forward as the ideal lead plaintiffs in private securities litigation." (internal quotation marks omitted)); *see also* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs . . . .").

### 2. Application

Before me are motions for appointment of lead plaintiff by the following eight movants: (1) Jenkins, (2) the Kirk Group, (3) the Bristol Group, (4) Oppenheim, (5) Magiera, (6) the Wang Group, (7) the Pension Plan, and (8) Ferber. I find that the Pension Plan is the "most adequate" plaintiff under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i), and that the remaining movants have failed to rebut this presumption. Thus, the Pension Plan is the appropriate lead plaintiff for this consolidated action.

### a. The Pension Plan is the Presumptive Lead plaintiff

#### i. *All Movants Filed Timely Motions*

As an initial matter, all movants timely filed for appointment as lead plaintiff. The Micholle Complaint was the first of the Ophthotech Actions to be filed. (*See* Micholle Compl.) On January 11, 2017, the same day that he filed his complaint, Micholle published a notice on Globe Newswire, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z–1(a)(3)(A)(i). (*See* Stolper Decl. Ex. A; Portnoy Decl. Ex. A.) The notice detailed the claims in the complaint, and informed the Class that they had until March 13, 2017 to move for appointment as lead

plaintiff.[11]

Jenkins, the Kirk Group, the Bristol Group, Oppenheim, Magiera, the Wang Group and the Pension Plan all moved for appointment as lead plaintiff on March 13, 2017, (Docs. 9, 12, 15, 21, 28, 30), and thus timely filed within the sixty-day statutory requirement. Additionally, Ferber attempted to file a timely motion (Doc. 25); however, he had to re-file because of deficient pleading. Although the re-filed motion was outside of the sixty-day period, the re-filed motion is identical to the motion deficiently filed on March 13, 2017. (*Compare* Doc. 25 *with* Doc. 35.) Because this technical error does not implicate concerns animating the PSLRA's requirement, such as litigants "jockeying" for a better position, *Khunt*, 102 F. Supp. 3d at 535, I will also consider Ferber's motion.

### ii. *Comparing Financial Interests*

Since March 13, 2017, the Kirk Group, Oppenheim, Magiera, and Ferber have filed notices of non-opposition acknowledging that they do not possess the largest financial interest, but stating that if the court were to determine that those with larger financial interests are inadequate to represent the class, they would be willing and able to serve as lead plaintiff.[12] (*See*

---

[11] Although sixty days from January 11, 2017 was March 12, 2017, this date fell on a Sunday, and thus, under Federal Rule of Civil Procedure 6, the motions were due on March 13, 2017. Fed. R. Civ. P. 6(a)(1)(C).

[12] The Kirk Group alleges $14,566.89 in losses. (Kirk Group Mem. 6.) Magiera alleges $288,469 in losses. (Magiera Mem. 6.) Ferber alleges approximately $20,000 in losses. (Ferber Mem. 8.) Oppenheim alleges $1,059,702 in losses, (Narwold Decl. Ex. B; Oppenheim Mem. 7); however, this number does not account for losses resulting from shares purchased and sold prior to December 12, 2016. Thus, Oppenheim's losses, when calculated in accordance with *Dura Pharmaceuticals*, 544 U.S. at 345, is $862,807. Because these losses do not surpass the losses of the remaining four movants, I will analyze those four movants before turning to any of the movants who filed non-opposition notices. "Kirk Group Mem." refers to the Memorandum of Law in Support of Colin Kirk, Dora Jordan, and Sonia Carrero-Pomeroy's Motion for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Lead Counsel, filed March 13, 2017. (Doc. 12.) "Magiera Mem." refers to the Memorandum of Law in Support of Frank Magiera's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed March 13, 2017. (Doc. 21.) "Ferber Mem." refers to the Memorandum of Law in Support of Movant Ferber's Motion to Consolidate the Actions, to be Appointed as Lead Plaintiff and for Approval of his Selection of Counsel, filed March 20, 2017. (Doc. 35.) "Narwold Decl." refers to the Declaration of William H. Narwold in Support of the Motion of Oppenheim Asset Management Services S.à.r.l. for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed March 13, 2017. (Doc. 20.) "Oppenheim Mem." refers to the Memorandum of Law in Support of Motion of Oppenheim Asset Management Services S.à.r.l. for Consolidation,

Kirk Group Non-Opp. Notice 1; Oppenheim Non-Opp. Notice 1; Ferber Non-Opp. Notice 2; Magiera Non-Opp. Notice 1.)  Of the remaining four motions filed by Jenkins, (Doc. 9), the Bristol Group, (Doc. 15), the Wang Group, (Doc. 28), and the Pension Plan, (Doc. 30), the Wang Group has the largest financial interest, followed by Jenkins, the Pension Plan, and Mayur Shah from the Bristol Group.

Jenkins's original motion stated that he had purchased 730,152 shares for $43,324,356, retained 33,650 shares of Ophthotech securities at the time of its December 12, 2016 disclosure, and suffered $4,140,587 in losses.  (Stolper Decl. Ex. C.)  This initially made him the movant with the highest financial losses.  On March 27, however, Jenkins adjusted this number from $4,140,587 to $1,659,767 because he "learned from Wells Fargo that the data provided for . . . certification reflected his tax basis and corresponding tax losses for the shares pursuant to Internal Revenue Service wash rules, not the actual purchase or sale price."  (Jenkins Opp. 2.) Further, as movants Pension Plan and Bristol Group allege in their opposition briefs (*see* Pension Plan Opp. 5–7; Bristol Group Opp. 4–5), Jenkins' financial losses are overstated, since many of his trades are "in-and-out" trades that occurred before Ophthotech's corrective disclosure on December 12, 2016, (*see* Stolper Decl. Ex. C.), and thus should not be considered, *see Topping*, 95 F. Supp. 3d at 618.  In addition, ten dates that Jenkins lists as "buy" dates are weekends, (*see* Rosenfeld Opp. Decl. Ex. 1; Hopkins Opp. Decl. Ex. B),[13] calling the accuracy of his data into question.  Based on my review of the record, Jenkins's recoverable loss for the period between

---

Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed March 13, 2017.  (Doc. 19.)

[13] "Rosenfeld Opp. Decl." refers to the Declaration of David A. Rosenfeld in Support of Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada's Opposition to Competing Lead Plaintiff Motions, filed March 27, 2017.  (Doc. 45.)  "Hopkins Opp. Decl." refers to the Declaration of Shannon L. Hopkins in Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel, filed March 28, 2017. (Doc. 47.)

May 11, 2015 and December 12, 2016 is approximately $1,100,000.00.[14]

The Wang Group alleges $3,561,093.00 in losses. (Hood Decl. Ex. C.)[15] First, I must consider whether Xing Wang and Genghong Zhao, the two individuals comprising the Wang Group, can aggregate their losses for the purpose of appointment as lead plaintiff. *See Varghese*, 589 F. Supp. 2d at 392. As the Wang Group made clear in its reply brief, Wang and Zhao are a married couple. (Wang Group Reply 7.) Thus, I find that Wang and Zhao will be able to "act collectively and separately from their lawyers," *Varghese*, 589 F. Supp. 2d at 392, and are properly considered a plaintiff group. Further, the record reflects that the Wang Group's financial losses between May 11, 2015 and December 12, 2016 was approximately $3,561,000. (Hood Decl. Ex. C, at 5.)

Next, the Bristol Group, consisting of the City of Bristol Pension Fund, Mayur Shah, Ashok Dalal, Brandon Suedekum, and Sergio Albonico, claims losses of $2,055,468.00 between May 11, 2015 and December 12, 2016. (*See* Hopkins Decl. Ex. B.)[16] In support of its appointment, the Bristol Group submitted a Joint Declaration stating that they would "exercise joint decision-making" and have "established procedures for overseeing the progress of the litigation and communicating regularly with counsel." (Hopkins Decl. Ex. C, ¶ 11.) The Joint Declaration states that the Bristol Group has "implemented communication procedures" and will "direct counsel and actively oversee the prosecution of the Actions." (*Id.* ¶ 12.) There is no

---

[14] After removing the "in-and-out" trades that were consummated prior to the December 16, 2017 disclosure, Jenkins retained approximately 33,650 shares of Ophthotech securities and had a financial losses of $1,097,677. (*See* Hopkins Opp. Decl. Ex. A.)

[15] "Hood Decl." refers to the Declaration of J. Alexander Hood II in Support of Motion of Xing Wang and Genghong Zhao for Consolidation, Appointment as Lead Plaintiffs, and Approval of Counsel, filed March 13, 2017. (Doc. 31.)

[16] "Hopkins Decl." refers to the Declaration of Shannon L. Hopkins in Support of the OPHT Investor Group's Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of its Selection of Co-Lead Counsel, filed March 13, 2017. (Doc. 17.)

evidence that the Bristol Group had any prior relationship or engaged in any cooperative efforts, and their only commonality is that each member of the plaintiff group invested in Ophthotech stock during the Class Period.  (*See id.* ¶¶ 2–6.)  The only evidence of cooperative efforts taken thus far is a conference call on March 13, 2017.  (*Id.* ¶ 9.)

Because I find that the Bristol Group has not provided sufficient evidence that it will function cohesively, and has only provided "conclusory assurances" that call into question whether it can manage this litigation effectively, *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011), the Bristol Group is not a proper plaintiff group.  As such, I will only consider the losses of the plaintiff with the greatest losses based on the Bristol Group's submissions—Mayur Shah, with approximately $956,114 in losses. (Hopkins Decl. Ex. B.)

Lastly, the Pension Plan initially calculated its losses at $1,004,573.27.  (*See* Rosenfeld Decl. Ex. C.)[17]  After excluding the stock bought and sold before December 12, 2016, the Pension Plan reduced its losses to $988,499.07.  (Pension Plan Opp. 19.)  The record indicates that this calculation is accurate and that the Pension Plan suffered approximately $988,499 in total losses between May 11, 2015 and December 12, 2016.  (Rosenfeld Decl. Ex. C.)

### iii. *Otherwise Satisfying Rule 23*

As set forth above, the movants' financial interests, from largest to smallest, are (1) the Wang Group, (2) Jenkins, (3) the Pension Plan, and (4) Mayur Shah.  I will now consider, in turn, whether these movants otherwise satisfy the requirements of Federal Rule of Civil Procedure 23.  Because the Wang Group and Jenkins fail to satisfy Rule 23's typicality and

---

[17] "Rosenfeld Decl." refers to the Declaration of David A. Rosenfeld in Support of Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed March 13, 2017.  (Doc. 33.)

adequacy requirements, the Pension Plan, which has the third largest financial interest and satisfies Rule 23's requirements, is presumptive lead plaintiff.

The Wang Group has the highest financial losses, and thus is considered the presumptive lead plaintiff as long as it otherwise satisfies Rule 23. I find, however, that the Wang Group fails to satisfy Rule 23's typicality requirement. As the Pension Plan highlights in its opposition, the Wang Group traded almost exclusively in put and call options, making Wang and Zhao atypical plaintiffs. (*See* Hood Decl. Ex. C, at 1, 5; Pension Plan Opp. 3 ("Wang and Zhao, cannot trigger the most adequate plaintiff presumption because they purchased ***no*** Ophthotech common stock during the Class Period, but instead ***only*** traded put and call option contracts in volumes which make their trading significantly atypical.").) Because options traders may "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict," the Wang Group fails to satisfy Rule 23 and will not be appointed lead plaintiff. *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL1321167, at *2 (S.D.N.Y. May 11, 2009).

Jenkins has the second largest financial interest of the remaining movants. The errors in his submissions, however, militate against appointment and render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement. As noted above, several dates listed are weekends, (*see* Rosenfeld Opp. Decl. Ex. 1; Hopkins Opp. Decl. Ex. B), and the prices he claims to have paid do not fall within the high and low range listed on Ophthotech's website, (*see* Hopkins Opp. Decl. Ex. B). Because of these errors and discrepancies, I find that Jenkins has failed to demonstrate that it has selected counsel that is qualified and experienced as required under Rule 23. *See Reitan*, 68 F. Supp. 3d at 400. Thus, Jenkins will not be appointed lead plaintiff.

The Pension Plan—the movant with the next largest financial interest—does satisfy the adequacy and typicality requirements of Rule 23. Members of this class are "persons who purchased or otherwise acquired Ophthotech common stock between May 11, 2015, and December 12, 2016," (Micholle Compl. ¶ 1), who claim to have been injured by Ophthotech's "scheme to deceive the market" by "artificially inflating the Company's stock price," (*id.* ¶ 45). As purchasers of Ophthotech common stock between May 11, 2015 and December 12, 2016, the Pension Plan has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise." *Initial Public Offering*, 214 F.R.D. at 121.

Further, the Pension Plan meets Rule 23's typicality requirement. The Pension Plan's counsel, Robbins Geller Rudman & Dowd LLP, is experienced and qualified, has represented plaintiffs in multiple other securities class action litigations, and has the ability to conduct the litigation effectively. (*See* Rosenfeld Decl. Ex. D.) In addition, the Pension Plan alleges significant damages due to Ophthotech's actions, and thus has "sufficient interest in the outcome of the case." *Initial Public Offering*, 214 F.R.D. at 121. Lastly, the Pension Plan is an institutional investor, weighing in its favor. *See Reitan*, 68 F. Supp. 3d at 396. Therefore, I find the Pension Plan is the presumptive lead plaintiff.

### b. No Other Movant has Rebutted the Presumption

In order to rebut the statutory presumption in favor of the Pension Plan, another movant must provide proof that it would not be able to "fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The only arguments offered by the Wang Group, Jenkins, and the Bristol Group with respect to the Pension Plan are based on the Pension Plan's smaller financial losses. (*See* Jenkins Reply 3; Wang Group Reply 2; Bristol

Group Opp. 2.)  As I have disqualified the movants with higher financial losses on Rule 23 grounds, rendering the Pension Plan the presumptive lead plaintiff, there are no remaining arguments that rebut the presumption in its favor.

### C.  *Appointment of Lead counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection."  *Sallustro*, 93 F. Supp. 3d at 278 (internal quotation marks omitted).

Having reviewed the Pension Plan's Memorandum of Law, (Doc. 32), as well as Rosenfeld's Declaration and the firm resume attached as Exhibit D to the Declaration, (Doc. 33), I find that Geller Rudman & Dowd LLP, the Pension Plan's proposed Lead Counsel, will adequately and effectively represent the interests of the class.  The attorneys at Geller Rudman & Dowd LLP have substantial experience with securities litigation and securities class actions. (*See* Pension Plan Mem. 7; Rosenfeld Decl. Ex. D.)  I approve the Pension Plan's selection and appoint Geller Rudman & Dowd LLP as Lead Counsel.

### III.  <u>Conclusion</u>

The motions for consolidation are GRANTED based on the similarity of the Ophthotech Actions.  Because I find that Pension Plan is the presumptive lead plaintiff and no other movants have rebutted that presumption, the Pension Plan's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED.  The Pension Plan has a substantial financial interest and meets the typicality and adequacy requirements of Rule 23.  The remaining motions from Jenkins, the Kirk Group, the Bristol Group, Oppenheim, Magiera, Ferber, and the Wang Group for appointment as lead plaintiff are DENIED.  The Clerk of Court is respectfully requested to

terminate the pending motions.  (Docs. 9, 12, 15, 18, 21, 28, 30, 35.)  Pension Plan is directed to

file an amended consolidated complaint no later than thirty (30) days after the date of issuance of

this Opinion & Order.  Defendants are directed to answer or otherwise respond to the amended

consolidated complaint no later than thirty (30) days after Pension Plan serves the amended

consolidated complaint.

SO ORDERED.

Dated: March 13, 2018
    New York, New York

Vernon S. Broderick
United States District Judge