UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────── x
FRANK MICHOLLE, Individually and on : Civil Action No. 1:17-cv-00210-VSB
Behalf of All Others Similarly Situated, : **(Consolidated)**
:
Plaintiff, : CLASS ACTION
:
vs. :
:
OPHTHOTECH CORPORATION, DAVID R. :
GUYER and SAMIR PATEL, :
:
Defendants. :
:
────────────────────────────── x

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
EXHIBITS SUBMITTED WITH DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT..................................................................................................................3

    A. Plaintiff's Motion to Strike Should Be Granted .......................................................3

        1. The Medical Articles and the Fovista Publications Should Be Stricken ...................................................................................................................4

            a. The Medical Articles Should Be Stricken .......................................5

            b. The Fovista Publications Should Be Stricken................................7

        2. The Investor Day Transcript Should Be Stricken .......................................8

        3. The Insider Sales Materials Should Be Stricken.........................................9

    B. References to, and Assertions and Arguments Based on, the Disputed Exhibits Should Be Stricken from Defendants' Motion to Dismiss......................12

III. CONCLUSION.............................................................................................................12

# TABLE OF AUTHORITIES

Page

**CASES**

*Billhofer v. Flamel Techs., S.A.*,
 281 F.R.D. 150 (S.D.N.Y. 2012) ....................................................................................... 7

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
 957 F. Supp. 2d 277 (S.D.N.Y. 2013) ............................................................................... 7

*City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*,
 2015 WL 1478565
 (E.D. Wis. Mar. 31, 2015) ............................................................................................... 10

*Cooper v. Pickett*,
 137 F.3d 616 (9th Cir. 1997) ............................................................................................. 9

*Cortec Indus., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991) ................................................................................................ 3

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
 2018 WL 3768037, __ F. Supp. 3d __
 (S.D.N.Y. Aug. 8, 2018) .................................................................................................... 5

*Electrical Workers Pension Tr. Fund of IBEW Local Union No. 58 v.*
 *CommScope, Inc.*,
 2013 WL 4014978
 (W.D.N.C. Aug. 6, 2013) ................................................................................................ 11

*Emps.' Ret. Sys. v. Blanford*,
 794 F.3d 297 (2d Cir. 2015) ............................................................................................ 12

*Freudenberg v. E*Trade Fin. Corp.*,
 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................................. 10

*Goel v. Bunge, Ltd.*,
 820 F.3d 554 (2d Cir. 2016) .................................................................................... 4, 8, 10

*In re Bausch & Lomb, Inc. Sec. Litig.*,
 2003 WL 23101782
 (W.D.N.Y. Mar. 28, 2003) ................................................................................................ 5

*In re Cardinal Health Inc. Sec. Litig.*,
 426 F. Supp. 2d 688 (S.D. Ohio 2006) ............................................................................ 11

Page

*In re Neopharm, Inc. Sec. Litig.*,
   2003 WL 262369
   (N.D. Ill. Feb. 7, 2003) ................................................................................................. 9

*In re StockerYale Sec. Litig.*,
   453 F. Supp. 2d 345 (D.N.H. 2006) .......................................................................... 5-6

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   2009 WL 5851089
   (D.N.M. Dec. 21, 2009) ............................................................................................ 10

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
   146 F.3d 66 (2d Cir. 1998) ..................................................................................... 3, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ....................................................................................... 4

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ........................................................................................ 6

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011) ........................................................................................ 3

*Mayo v. Fed. Gov't*,
   558 F. App'x 55 (2d Cir. 2014) ................................................................................... 3

*Nyberg v. Zurich Am. Ins. Co.*,
   220 F. Supp. 3d 1114 (D. Kan. 2016) .......................................................................... 5

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.
   Arbitron Inc.*,
   741 F. Supp. 2d 474 (S.D.N.Y. 2010) .......................................................................... 7

*Reilly v. U.S. Physical Therapy, Inc.*,
   2018 WL 3559089
   (S.D.N.Y. July 23, 2018) .......................................................................................... 7-8

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007) ............................................................................... passim

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) .......................................................................................... 8

**Page**

*Talwar v. Staten Island Univ. Hosp.*,
   2016 WL 1298969
   (E.D.N.Y. Mar. 31, 2016) ................................................................................................12

*Tomasino v. Estee Lauder Cos., Inc.*,
   2015 WL 1470177
   (E.D.N.Y. Mar. 31, 2015) ............................................................................................ 6-7

*U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*,
   2012 WL 6136017
   (S.D.N.Y. Dec. 11, 2012)............................................................................................ 3-4

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
   2017 WL 3610584
   (S.D.N.Y. July 26, 2017) ................................................................................................10

*Wagner v. Royal Bank of Scotland Grp. PLC*,
   2013 WL 4779039
   (S.D.N.Y. Sept. 5, 2013)..........................................................................................10, 11

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
   286 F. Supp. 3d 634 (S.D.N.Y. 2017)..............................................................................4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u 4(b)(3)(B).................................................................................................................2

Federal Rules of Civil Procedure
   Rule 12(b)(6).......................................................................................................1, 3, 4, 11
   Rule 12(d) .........................................................................................................................2

Federal Rules of Evidence
   Rule 201 .........................................................................................................................3, 6
   Rule 201(b) ........................................................................................................................3
   Rule 1006 ........................................................................................................................11

17 C.F.R.
   §240.10b5-1 ..........................................................................................................9, 10, 11

**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995 ....................................................................2, 4

Lead Plaintiff Sheet Metal Workers' Pension Plan of Southern California, Arizona, and Nevada ("Plaintiff"), respectfully submits this memorandum of law in support of its motion for an Order striking: (i) the Disputed Exhibits (defined below) attached to the Declaration of Jeremy T. Adler, dated July 27, 2018 ("Adler Decl."), filed in support of Defendants' motion to dismiss the Consolidated Amended Complaint (the "CAC");[1] and (ii) references to, and assertions and arguments based on, the Disputed Exhibits in Defendants' memorandum of law, dated July 27, 2018 ("Def. Mem."), submitted in support of the motion to dismiss.[2]

## I.      INTRODUCTION

It is well-established that on a Rule 12(b)(6) motion to dismiss, a court must decide whether the allegations of a complaint, accepted as true, with inferences drawn in plaintiff's favor, set forth a legally cognizable claim. *See Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). The time for resolving factual disputes comes later, only after both parties have had an opportunity to conduct discovery and develop a sufficient factual record. In an effort to develop their own set of facts that are inconsistent with the CAC, Defendants have improperly attached 83 exhibits, totaling over 400 pages, to their motion to dismiss. By this motion, Plaintiff seeks to strike: (i) Exhibits 2 and 3, which are academic papers published in medical journals (the "Medical Articles"); (ii) Exhibits 4 and 8, which are published studies discussing the results of Ophthotech's phase 2b and phase 1 clinical trials for Fovista, respectively (the "Fovista Publications"); (iii) Exhibit 7, which is a

---

[1]   "Defendants" refers to Ophthotech Corp. ("Ophthotech" or the "Company"), David R. Guyer, M.D. ("Guyer"), and Samir Patel, M.D. ("Patel"). Plaintiff cites the paragraphs in the CAC as "¶__" or "¶¶__."

[2]   Plaintiff incorporates by reference the Statement of Facts set forth in its memorandum of law in opposition to Defendants' motion to dismiss, filed contemporaneously with this motion to strike. Plaintiff cites the exhibits attached to the Adler Decl. as "Def. Ex. __." Plaintiff cites the exhibits attached to the Declaration of Erin W. Boardman in Support of Plaintiff's Motion to Strike Exhibits Submitted with Defendants' Motion to Dismiss, dated October 12, 2018, as "Pl. Ex. __." Unless otherwise noted, emphasis in quotations is added and citations are omitted.

transcript of the December 3, 2015 investor day conference (the "Investor Day Transcript"); and (iv) Exhibits 10-83, which consist of a Form 3 and 73 Forms 4, along with Appendices A and B attached to Defendants' memorandum of law in support of dismissal that summarize the Form 3 and Forms 4 (the "Insider Sales Materials") (collectively, the "Disputed Exhibits").

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), defendants in securities fraud actions may either: (i) answer the complaint and engage in discovery; or (ii) move to dismiss the complaint, thus invoking the PSLRA's automatic stay of discovery. *See* 15 U.S.C. §78u 4(b)(3)(B). Here, Defendants chose to file a motion to dismiss, utilizing the PSLRA's discovery stay as both a shield and a sword: Defendants submitted scores of extraneous documents with their motion asking the Court to determine substantive factual issues, enjoying the robust privileges of the stay, while preventing Plaintiff from developing a fulsome factual record.

Worse yet, even assuming the Disputed Exhibits were available for judicial review under either the incorporation by reference doctrine or the judicial notice doctrine (which they are not), Defendants ask the Court to consider the Disputed Exhibits for the truth of their contents, not simply for the fact that they exist. This flies in the face of longstanding Second Circuit precedent. Accordingly, the Disputed Exhibits, and all references to and assertions and arguments based on them in the motion to dismiss briefing, should be stricken.

Alternatively, if the Court considers the extraneous materials offered by Defendants, Plaintiff respectfully requests that Defendants' motion to dismiss be converted to a motion for summary judgment and the parties be provided with a reasonable opportunity to conduct discovery. *See* Fed. R. Civ. P. 12(d).

**II.     ARGUMENT**

    **A.     Plaintiff's Motion to Strike Should Be Granted**

In evaluating the sufficiency of a complaint in the context of a Rule 12(b)(6) motion, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). For this reason, "in considering a motion to dismiss," "court[s] normally may not look beyond the four corners of the complaint[.]" *Mayo v. Fed. Gov't*, 558 F. App'x 55, 56 (2d Cir. 2014). Only two narrow exceptions – incorporation by reference or judicial notice – permit a district court to consider external materials at this stage. *See Roth*, 489 F.3d at 509.

Where appropriate, a court may consider "documents attached to the complaint as exhibits or incorporated in it by reference," and any document "'upon which [the complaint] *solely* relies and which is *integral to the complaint*.'" *Id.* at 503, 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis and brackets added by *Roth* court). Similarly, a court may take judicial notice of a public record that is not attached to the complaint or incorporated in it by reference, if the facts in it are "not subject to reasonable dispute." Fed. R. Evid. 201. "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting Fed. R. Evid. 201(b)).

However, if the court considers documents that are outside of the four corners of the complaint, the court may consider them "'only to determine *what* the document stated,' and '*not to prove the truth of their contents*.'" *Roth*, 489 F.3d at 509 (emphasis in original). Moreover, it is imperative that plaintiff "'reli[ed] on the terms and effect of a document in drafting the complaint . . . mere notice or possession [of the document] is not enough.'" *U.S. Bank Nat. Ass'n v. Bank of Am.,*

- 3 -

*N.A.*, 2012 WL 6136017, at *2 (S.D.N.Y. Dec. 11, 2012).  To consider the documents for the truth of their contents would "'permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding – one featuring a bespoke factual record, tailor-made to suit the needs of defendants.'"  *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 646 n.4 (S.D.N.Y. 2017) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016)).  The United States Court of Appeals for the Ninth Circuit recently warned of PSLRA defendants' abuse of these two doctrines:

> ***Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint***, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.  Without that opportunity to respond, the defendant's newly-expanded version of the complaint – accepted as true at the pleading stage – can easily topple otherwise cognizable claims.  ***Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim***.

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).  Yet that is exactly what Defendants do here.  Defendants seek to inappropriately sidestep the procedural protections afforded to Plaintiff under the PSLRA.  Because none of the Disputed Exhibits are incorporated by reference in the CAC or are proper candidates for judicial notice, the Court should strike all references to, and assertions and arguments based on, the Disputed Exhibits.

        **1.**     **The Medical Articles and the Fovista Publications Should Be Stricken**

Defendants impermissibly ask this Court to accept scientific definitions and data set forth in Exhibits 2, 3, 4, and 8 that are not well known within the territory, are reasonably subject to dispute, and are not integral to the CAC.  Not only do Defendants ask the Court to consider these documents, they also ask the Court to accept as true the factual assertions contained therein.  By relying on the Medical Articles and the Fovista Publications to make fact-intensive arguments, Defendants raise

- 4 -

contested factual issues that are not appropriate for resolution on a motion to dismiss. As such, the Court should strike the Medical Articles and the Fovista Publications.

### a. The Medical Articles Should Be Stricken

Defendants acknowledge in their memorandum of law that Exhibits 2 and 3 are not attached to or referenced in the CAC. *See* Def. Mem. at 4 n.3, 9 (providing no citations to paragraphs in the CAC). Thus, none of these exhibits can be "integral to the complaint." *See Roth*, 489 F.3d at 509. As such, Defendants cannot rely on the incorporation by reference doctrine for the Medical Articles. *See DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 2018 WL 3768037, at *44, __ F. Supp. 3d __ (S.D.N.Y. Aug. 8, 2018) ("Those documents, however, are extrinsic to the complaint. Plaintiffs do not cite to them in their pleading, and it is far from apparent that Plaintiffs relied on those documents in drafting the [] amended complaint.").

The judicial notice doctrine is equally unavailing for the Medical Articles. Defendants submit these exhibits to establish the purported definitions of "classic" and "occult" lesion subtypes and subretinal hyperreflective material ("SHRM"). But these articles cannot be judicially noticed because the scientific definitions on which Defendants rely are reasonably subject to dispute. In fact, even the title of Exhibit 2 suggests that the classifications for lesion subtypes are subject to dispute within the medical community. *See* Def. Ex. 2 ("Do We Need a New Classification for Choroidal Neovascularization in Age-Related Macular degeneration?"); *In re Bausch & Lomb, Inc. Sec. Litig.*, 2003 WL 23101782, at *16 (W.D.N.Y. Mar. 28, 2003) (declining to judicially notice dictionary's definition of industry term-of-art); *see also Nyberg v. Zurich Am. Ins. Co.*, 220 F. Supp. 3d 1114, 1119 n.14 (D. Kan. 2016) (declining to take judicial notice of medical definitions). Indeed, the article outlines how professionals in the medical community were proposing alternative definitions for classifying lesion subtypes. *See* Def. Ex. 2 at 1334. Furthermore, Exhibit 2 is an editorial, which by its very nature is subject to dispute because these are typically opinion-like articles. *See, e.g.*, *In

- 5 -

*re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345, 348 (D.N.H. 2006) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)) (noting that "editorial comments and analysis contained in [] commentary" were not subject to judicial notice).

Exhibit 3 fares no better under the judicial notice doctrine. First, Defendants offer the document to ask the Court to accept their definitions of lesion subtypes, which as explained, is improper. Defendants also offer Exhibit 3 in an attempt to argue that there were no meaningful changes to the patient inclusion criteria for the phase 3 clinical trials because, as Defendants contend, classic lesions are merely a proxy for SHRM. *See* Def. Mem. at 10, 12, 22. But as the CAC explains, "SHRM was a newly-discovered phenomenon, and its relationship to visual acuity in wet [age-related macular degeneration] patients *had not been thoroughly studied and was not fully understood*." ¶56. Therefore, the CAC establishes on its face that SHRM and its properties were not "generally known" within the territory during the Class Period (March 2, 2015 through December 12, 2016), as required by Federal Rule of Evidence 201. Accordingly, the accuracy of the scientific definitions contained in Exhibit 3 are reasonably subject to dispute because the medical community was continuing to develop its understanding of SHRM. Finally, investors could not possibly have relied upon Exhibit 3's purported definition of SHRM to understand that SHRM supposedly served as a proxy for classic lesions, as Defendants would like the Court to believe, because Exhibit 3 was published in *May 2018*, almost a year and-a-half after the Class Period ended.

By submitting Exhibits 2 and 3 with their motion to dismiss, Defendants inherently ask the Court to credit the truth of the assertions contained in these exhibits – otherwise referencing the filings would serve no purpose. *See* Def. Mem. at 8 (citing Def. Ex. 5). But, as explained above, the information in the Medical Articles is not capable of accurate determination at this early stage in the litigation. *See Tomasino v. Estee Lauder Cos., Inc.*, 2015 WL 1470177, at *6 (E.D.N.Y. Mar. 31,

2015) (declining to judicially notice scientific studies because they "could only create a point of factual dispute that is not properly decided on a motion to dismiss"); *see also City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013) ("Similarly, courts often consider newspaper articles for the 'fact of their publication' on a motion to dismiss, *but not for the truth of the matters reported on.*").[3]  Therefore, the Court should strike the Medical Articles.

### b.     The Fovista Publications Should Be Stricken

Defendants improperly ask the Court to consider Exhibit 4, the academic paper discussing the results of the phase 2b clinical trial, for the truth of its contents. Specifically, Defendants cite Exhibit 4 to argue that they adequately disclosed to investors information concerning imbalances in patients' lesion sizes and Ophthotech's supposed efforts to control for the imbalance. Def. Mem. at 17. Defendants rely on Exhibit 8, the published results of the phase 1 clinical trial, to dispute the CAC's allegation in ¶60 that when images of patients' lesions were examined at the end of Ophthotech's phase 1 clinical trial, the occult components of the lesions appeared to be unaffected by treatment with Fovista. Def. Mem. at 24.[4] But these determinations are inappropriate at the motion to dismiss stage because Exhibits 4 and 8 can only be judicially noticed for the fact that they exist, not for the truth of their contents. *See Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL

---

[3]   Defendants have submitted Exhibits 2 and 3 in their entirety. However, Defendants ignore that the full articles were not readily available to investors because a paid subscription is required to view the Medical Articles. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 160 (S.D.N.Y. 2012) (finding that clinical trial results were not "'publicly available' simply because they were posted in an obscure location on the internet"); *see also Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron Inc.*, 741 F. Supp. 2d 474, 486 (S.D.N.Y. 2010) (finding articles in niche publications should not be considered part of the total mix of information available to investors and questioning whether they were even subject to judicial notice). The only information available to the public is abbreviated abstracts that do not mention the definitions for which Defendants have submitted the Medical Articles. *See* Pl. Exs. 1-2.

[4]   Like the Medical Articles, only an abstract of the phase 1 clinical trial was freely available to the public. As such, this information was unavailable to investors. *See* Pl. Ex. 3.

3559089, at *10 (S.D.N.Y. July 23, 2018) (declining to judicially notice exhibits that supported complex substantive arguments); *Kinross*, 957 F. Supp. 2d at 289.

Nor are these exhibits incorporated by reference in the CAC. The CAC does not quote or cite to the phase 1 clinical trial; instead just two paragraphs in the CAC make a passing reference to the phase 1 clinical trial. *See* ¶¶60, 95; *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents . . . is not enough to incorporate those documents, wholesale, into the complaint."). Thus, Exhibit 8 cannot plausibly be integral to the CAC. Similarly, Exhibit 4 is not attached to the CAC nor is it incorporated by reference. Instead, the CAC quotes an October 31, 2016 press release announcing that the results of the phase 2b trial had been published, but does not quote the publication itself. ¶117. Just one sentence in the CAC references the Phase 2b publication (¶119), which does not satisfy the heavy burden needed to show that it is "integral" to the CAC. *See Sira*, 380 F.3d at 67. As such, the incorporation by reference doctrine does not apply to Exhibits 4 and 8.

### 2. The Investor Day Transcript Should Be Stricken

Exhibit 7, the Investor Day Transcript, should be stricken because it is not an integral document on which the complaint heavily relies. "Merely mentioning a document in the complaint will not satisfy [the incorporation by reference] standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Goel*, 820 F.3d at 559 (second alteration in original). The single paragraph in the CAC mentioning the investor day conference (¶84) only cites three sentences from the transcript, and thus, cannot possibly be a document on "which [the complaint] *solely* relies and [] is *integral to the complaint*[.]" *Roth*, 489 F.3d at 509 (emphasis and alteration in original).

Additionally, the Investor Day Transcript must be stricken because it is not a proper candidate for judicial notice. Because investor conference call transcripts are not "'historical documents, documents contained in public record, [or] reports, decisions, and regulations of

- 8 -

administrative bodies'" they are not subject to judicial notice. *In re Neopharm, Inc. Sec. Litig.*, 2003 WL 262369, at *2-*3 (N.D. Ill. Feb. 7, 2003); *see also Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) ("In the complaint, plaintiffs make allegations about the conference calls, but do not expressly mention or refer to the transcripts, or even identify their existence.").

Moreover, judicial notice of the Investor Day Transcript is not appropriate because Defendants submit this transcript to argue that investors understood that the change in enrollment criteria for the phase 3 trials was not meaningful because SHRM is equivalent to classic lesions. Def. Mem. at 22 & n.16. First, the CAC plainly disputes the truth of Defendants' assertion that SHRM is equivalent to classic lesions. *See* ¶¶53-59, 71, 91, 105, 116, 139. Second, Defendants' reliance on the Investor Day Transcript to prove what the market "understood" in connection with their premature truth-on-the-market defense improperly asks the Court to give them the benefit of every favorable factual inference arising from the Investor Day Transcript. *See Roth*, 489 F.3d at 511 (concluding that the district court "improperly considered the representations in defendants' [SEC] filings for the truth of their assertions" because "[e]ven assuming that those factual assertions were relevant, they raised issues of fact that should not have been determined at the pleading stage"). Accordingly, the Court should strike the Investor Day Transcript.

### 3. The Insider Sales Materials Should Be Stricken

Defendants submit one Form 3, 73 Forms 4, and their self-created Appendices A and B in support of their argument that Guyer and Patel's stock sales were not unusual or suspicious because they were consistent with their trading practices during the year before the start of the Class Period, and were made pursuant to Rule 10b5-1 trading plans or in connection with restricted stock unit agreements. Def. Mem. at 27-30. In doing so, Defendants inherently ask the Court to credit the truth of the assertions contained in these exhibits – otherwise submitting them would serve no purpose. Because Defendants seek to introduce the Insider Sales Materials not solely for the fact

that they exist (*Roth*, 489 F.3d at 509), but rather to demonstrate that Guyer and Patel's insider sales were not unusual or suspicious, Defendants have improperly submitted the Insider Sales Materials to prove the truth of their contents. *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2017 WL 3610584, at *10 (S.D.N.Y. July 26, 2017) ("[I]n those cases in which SEC filings have been found judicially noticeable, the Court considered the documents 'only to determine what the documents stated,' and '*not to prove the truth of their contents.*'") (emphasis in original); *Wagner v. Royal Bank of Scotland Grp. PLC*, 2013 WL 4779039, at *3 (S.D.N.Y. Sept. 5, 2013) (declining to judicially notice Forms 4 because defendants submitted them for the truth of their contents); *see also City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, 2015 WL 1478565, at *5 (E.D. Wis. Mar. 31, 2015) (striking Forms 4 because "it is impossible at this stage of the case for the court to determine whether [the representations contained therein] are correct."); *In re Thornburg Mortg., Inc. Sec. Litig.*, 2009 WL 5851089, at *3 (D.N.M. Dec. 21, 2009) (refusing to recognize the truth of Forms 4, noting that "the contents of the SEC filings is potentially false, as the documents were created by individuals, fallible and potentially prone to untruth as humans sometimes tend to be").[5]

Moreover, "'[t]he existence of a Rule 10b5-1 Trading Plan is an affirmative defense that must be pled *and proved*.'" *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 200-01 (S.D.N.Y. 2010). Far from satisfying this demanding standard, the Forms 4 contain passing references to the purported plans in footnotes. These references merely present hearsay evidence of

---

[5] The Insider Sales Materials also are not incorporated by reference in the CAC. The Insider Sales Materials appear nowhere in the CAC, which Defendants acknowledge. *See* Adler Decl. at ¶¶10-83 (providing no citations to paragraphs in the CAC). As such, none of these exhibits can plausibly be "integral to the complaint." *See Roth*, 489 F.3d at 509; *Chambers*, 282 F.3d at 153. The CAC makes no reference to Guyer and Patel's stock sales during the year prior to the Class Period and makes only a single, passing reference to the existence of Rule 10b5-1 trading plans (¶146), which is insufficient for incorporation by reference. *See Goel*, 820 F.3d at 559; *accord Kohl's Corp.*, 2015 WL 1478565, at *5 (holding that a pleading does not incorporate a Rule 10b5-1 trading plan by reference when the pleading makes no mention of the plan).

the existence of the Rule 10b5-1 trading plans, and are therefore insufficient to establish a Rule 10b5-1 trading plan affirmative defense on a motion to dismiss. *See Wagner*, 2013 WL 4779039, at \*3-\*4 (rejecting defendants' attempt to use Forms 4 to establish an affirmative defense on a Rule 12(b)(6) motion as contrary to Second Circuit authority and noting that SEC Form 4 "is 'not . . . a model of clarity.'"); *see also Electrical Workers Pension Tr. Fund of IBEW Local Union No. 58 v. CommScope, Inc.*, 2013 WL 4014978, at \*7 (W.D.N.C. Aug. 6, 2013) (finding that "Defendants' filings of 10b5-1 plans" cannot "automatically negate an inference of scienter as a matter of law"); *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 734 (S.D. Ohio 2006) ("[a]s it is typically premature to raise affirmative defenses in a motion to dismiss, this Court will not consider the impact of [an executive's] purported 10b5-1 trading plan at this stage of the pleadings").

The Insider Sales Materials also present the Court with an incomplete and potentially misleading snapshot of Guyer and Patel's trades pursuant to Rule 10b5-1 trading plans. Specifically, the Appendices and the Forms 4 do not disclose the terms of Guyer and Patel's Rule 10b5-1 trading plans or provide any information that would enable the Court to determine whether Guyer and Patel strategically amended the plans to take advantage of material, non-public information. ¶146. Because the import of the Insider Sales Materials is subject to reasonable dispute, the Court should decline to judicially notice these materials. *See Kinross*, 957 F. Supp. 2d at 288 (judicial notice is inappropriate where "the causal connection that defendants posit is plausibly subject to dispute").[6]

And even if the Court accepted these exhibits for their truth, Rule 10b5-1 trading plans cannot negate an inference of scienter where, as here, they were entered into at a time when

---

[6] The Court should strike Defendants' self-created charts contained in Appendices A and B for the additional reason that they plainly are not subject to judicial notice. *See Int'l Star Class Yacht Racing*, 146 F.3d at 70. Defendants assert that the charts are appropriate because they summarize the content of Guyer and Patel's Form 3 and Forms 4. Def. Mem. at 28 n.21. But Defendants do not provide any indication that these one-to-two page documents "cannot be conveniently examined in court" as required by Federal Rule of Evidence 1006.

Defendants were in possession of material, nonpublic information. *See Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015). Accordingly, the Insider Sales Materials should be stricken.

### B. References to, and Assertions and Arguments Based on, the Disputed Exhibits Should Be Stricken from Defendants' Motion to Dismiss

Because the Court should strike the Disputed Exhibits, references to, and assertions and arguments based on, the Disputed Exhibits should also be stricken from Defendants' memorandum of law in support of their motion to dismiss. *See, e.g.*, *Talwar v. Staten Island Univ. Hosp.*, 2016 WL 1298969, at *7 (E.D.N.Y. Mar. 31, 2016) (striking declaration submitted in support of a motion and "all exhibits thereto, and all arguments based on that evidence").

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and strike the Disputed Exhibits and all references to, and all assertions and arguments based on, the Disputed Exhibits in Defendants' motion to dismiss brief, or, in the alternative, permit Plaintiff to conduct full and complete fact and expert discovery and then proceed to summary judgment.

DATED: October 12, 2018                ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       DAVID A. ROSENFELD
                                       ERIN W. BOARDMAN
                                       LINDSAY LA MARCA


                                               */s/ Erin W. Boardman*
                                       ERIN W. BOARDMAN

                                        58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
llamarca@rgrdlaw.com

*Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Erin W. Boardman, hereby certify that on October 12, 2018, I authorized a true and correct copy of the Memorandum of Law in Support of Plaintiff's Motion to Strike Exhibits Submitted with Defendants' Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Erin W. Boardman*
Erin W. Boardman