UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

FRANK MICHOLLE, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

OPHTHOTECH CORPORATION, DAVID R.
GUYER and SAMIR PATEL,

Defendants.

———————————————————————— x

: Civil Action No. 1:17-cv-00210-VSB-GWG
: **(Consolidated)**
:
: CLASS ACTION
:
:
:
:
:
:
:
:
:

MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF
ALLOCATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS..................................................................................................3

        A.      The Law Favors and Encourages Settlements ...........................................3

        B.      The Settlement Must Be Procedurally and Substantively Fair, Adequate,
                and Reasonable .........................................................................................4

        C.      The Proposed Settlement Is Procedurally and Substantively Fair,
                Adequate, and Reasonable ........................................................................6

                1.      The Settlement Satisfies the Requirements of Rule 23(e)(2)......................6

                2.      The Settlement Satisfies the Remaining *Grinnell* Factors.........................13

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................17

V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES
        OF EFFECTUATING THE SETTLEMENT ....................................................18

VI.     NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23
        AND DUE PROCESS ........................................................................................19

VII.    CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Castagna v. Madison Square Garden, L.P.*,
    2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................................................................16

*Charron v. Pinnacle Grp. NY LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012),
    *aff'd sub nom. Charron v. Wiener*,
    731 F.3d 241 (2d. Cir. 2013) .....................................................................................................7

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................... *passim*

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ......................................................................................14, 16

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ........................................................................................................6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ...................................................................................................5, 7

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..................................................................................... *passim*

*Dornberger v. Metro Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................................21

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .....................................................................11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................3, 7, 10, 17

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987) .......................................................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................................................................8

**Page**

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...............................................................14, 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg.,*
   *Sales Practices & Prods. Liability Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) .............................................................6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018),
   *aff'd*, 822 F. App'x 40 (2d Cir. 2020)............................................................. *passim*

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................................................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................5, 8, 14, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .........................................................14

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................10, 17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................19

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)........................................................................5

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................17

*In re Payment Card Interchange Fee &*
   *Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................5

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...........................................................16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................10

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).......................................................13, 18

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................17

Page

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000),
  *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...................................................................................9

*Martignago v. Merrill Lynch & Co., Inc.*,
  2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013) ......................................................................14

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................................................3, 7, 15

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)................................................................................................16

*Padro v. Astrue*,
  2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)......................................................................21

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) .......................................................................................12

*Snyder v. Ocwen Loan Servicing, LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) ........................................................................6

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................10

*Thompson v. Metro Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .............................................................................................5

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014). Notice.............................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................................3, 7, 19

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ....................................................................5, 14

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) .............................................................................................................................1

**Page**

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................................19
    Rule 23(a) .........................................................................................................18, 19
    Rule 23(b)(3) ....................................................................................................18, 19
    Rule 23(c) ...............................................................................................................15
    Rule 23(c)(2)(B) ...............................................................................................19, 21
    Rule 23(e) ..........................................................................................................*passim*
    Rule 23(e)(1)(B) .....................................................................................................19
    Rule 23(e)(2) .....................................................................................................*passim*
    Rule 23(e)(2)(A) .......................................................................................................7
    Rule 23(e)(2)(B) .......................................................................................................7
    Rule 23(e)(2)(C)(i) .............................................................................................8, 11
    Rule 23(e)(2)(C)(ii) ...............................................................................................11
    Rule 23(e)(2)(C)(iii) ..............................................................................................12
    Rule 23(e)(2)(C)(iv) ..............................................................................................12
    Rule 23(e)(2)(D) ....................................................................................................13
    Rule 23(e)(3) .......................................................................................................4, 12

17 C.F.R.
    §240.10b-5-1 ........................................................................................................2, 9

## SECONDARY AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis* (Cornerstone Research 2022) ...............................................................17

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada, on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion for final approval of the $29,000,000 Settlement (the "Settlement Amount") reached in this action (the "Litigation") and approval of the Plan of Allocation (the "Plan").  The terms of the Settlement are set forth in the Stipulation of Settlement dated September 8, 2021 (the "Stipulation").  ECF 129.[1]

## I.      INTRODUCTION

Lead Plaintiff's $29 million recovery is the result of its rigorous four-plus-year effort to prosecute this highly contested litigation, reached following extensive arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally renowned mediator.  The Settlement represents a very good result for the Class and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Lead Plaintiff faced.  The gravamen of Lead Plaintiff's claims was that, during the Class Period, Defendants made materially false and misleading statements concerning Ophthotech's clinical trials of Fovista, the Company's leading drug candidate to treat a degenerative eye disease known as wet AMD.  While Lead Plaintiff believes in the merit of its claims, Defendants had strong and credible arguments that Lead Plaintiff could not establish any materially false or misleading statements concerning the change in enrollment criteria for the phase 3 trials because Defendants had

---

[1]   All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of Erin W. Boardman in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Boardman Decl."), submitted herewith.  Citations are omitted and emphasis is added throughout unless otherwise noted.

adequately disclosed the change to requiring SHRM.  Boardman Decl., ¶25.  Defendants also argued that Lead Plaintiff could not establish a strong inference of scienter because there was no evidence that Defendants knew or had access to information inconsistent with their public statements.  *Id.*, ¶26.  They also argued that defendants Guyer's and Patel's Class Period stock sales were consistent with their prior trading patterns and were made pursuant to Rule 10b-5-1 trading plans.  *Id.* Defendants also firmly argued that Lead Plaintiff could not establish loss causation because there was no link between the alleged corrective disclosure – the failure of the phase 3 trials – and the subject matter of the alleged misstatements, and that to the extent the Class suffered any damages (which they vehemently denied), they were far lower than the amount calculated by Lead Plaintiff's expert.[2]

Given the advanced stage of the litigation, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted significant factual investigation into the merits of the claims, engaged in briefing in connection with Defendants' motion to dismiss, conducted extensive fact discovery, including document review and depositions, engaged in class certification discovery, and participated in formal mediation discussions.  Lead Plaintiff and Lead Counsel also knew that despite their belief in the merits of the claims, there existed the possibility of little or no recovery at all.  Moreover, a skilled and highly reputable securities litigation mediator – the Hon. Layn Phillips (Ret.) – assisted the parties in reaching a resolution of the case for $29 million.

Given the risks to proceeding and the excellent recovery obtained, Lead Plaintiff respectfully submits that the $29 million Settlement and the Plan – which was prepared with the assistance of

---

[2]   In its order on Defendants' motion to dismiss, the Court dismissed Lead Plaintiff's claims concerning Defendants' alleged misstatements concerning the results of the Company's phase 2b trial for Fovista.  *Id.*, ¶32.

Lead Counsel's damages expert, and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Boardman Decl. for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").  Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

As set forth below, the $29 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, is manifestly reasonable, fair, and adequate under all of the

pertinent factors courts use to evaluate a settlement.  Accordingly, the Settlement warrants final

approval from this Court.

**B.      The Settlement Must Be Procedurally and Substantively Fair,
            Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement.

Rule 23(e)(2) provides that courts should consider certain factors when determining whether a class

action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

(A)      the class representatives and class counsel have adequately represented the
            class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the
            class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorneys' fees, including timing
            of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"),

which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action

settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the

class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4)

the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining

the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the

range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* [F]actors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 310-11 (S.D.N.Y. 2020).

For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate, not every factor need be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "'[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

Under Rule 23(e)(2), courts "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. As set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Class, and Approval of Notice to the Class (ECF 128), and acknowledged by this Court's Opinion & Order (ECF 135), Lead Plaintiff meets all of the requirements imposed by Rule 23(e)(2). Courts have noted that a plaintiff's satisfaction of these

factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

## C. The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

### 1. The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### a. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Class. Additionally, Lead Plaintiff and Lead Counsel have adequately represented the Class by zealously prosecuting this action, including by, among other things, conducting an extensive investigation of the relevant factual events, drafting a highly detailed amended complaint, opposing Defendants' motion to dismiss, engaging in class certification and merits discovery, and preparing for and participating in a mediation session before Judge Phillips. *See generally* Boardman Decl. Through each step of the Litigation, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Class. Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

**b.    The Proposed Settlement Was Negotiated at Arm's
Length Before an Experienced Mediator**

Lead Plaintiff satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Boardman Decl., ¶¶70-75.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at *4 ("Arm's length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Moreover, the Settlement negotiations in this case were "carried out under the direction of Lead Plaintiff[], . . . whose involvement suggests procedural fairness." *Facebook*, 343 F. Supp. 3d at 409.

It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate, and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").  Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

- 7 -

        **c.**      **The Proposed Settlement Is Adequate in Light of the**
                      **Litigation Risks, Costs, and Delays of Trial and Appeal**

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the

substantive fairness of the Settlement in light of the risks posed by continuing litigation. As set forth

below, these factors weigh in favor of final approval.

        **(1)**      **The Risks of Establishing Liability at Trial**

In considering this factor, "the Court need only assess the risks of litigation against the

certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459. As a

preliminary matter, the significant unpredictability and complexity posed by securities class actions

generally weigh in favor of final approval. Indeed, "'[i]n evaluating the settlement of a securities

class action, federal courts, including this Court, have long recognized that such litigation is notably

difficult and notoriously uncertain.'" *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10

(S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL

4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,

2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a

common risk of securities litigation."). Although Lead Plaintiff and Lead Counsel firmly believe

that the claims asserted in the Litigation are meritorious, and that they would prevail at trial, further

litigation against Defendants posed risks that made any recovery uncertain.

As set forth above and in the Boardman Decl., at the time of the Settlement, the parties were

engaged in full scale merits discovery, with expert discovery on the horizon. Defendants have

vigorously contested their liability and have denied and continue to deny each and every claim and

allegation of wrongdoing. Specifically, Defendants have argued that Lead Plaintiff has not alleged

any actionable material misstatements or omissions, because: (i) Defendants adequately disclosed

the change to requiring SHRM in the phase 3 trials; and (ii) the change was not "meaningful"

because it did not have the effect of making occult patients eligible for the phase 3 trials, and did not increase the risk that the phase 3 trials would fail.  Boardman Decl., ¶25.  Defendants further maintained that Lead Plaintiff has not sufficiently alleged Defendants' scienter because it could not establish that Defendants knew or had access to information inconsistent with their public statements.  *Id.*, ¶26.  Defendants further argued that Lead Plaintiff's motive allegations failed because Guyer and Patel's stock sales were consistent with their prior trading patterns and were made pursuant to Rule 10b5-1 trading plans.  *Id.  See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001).  In light of the difficulty of pleading falsity, materiality, scienter, and loss causation in securities fraud class actions under the high bar of the PSLRA, Lead Plaintiff knew it faced a substantial risk that the Court would grant Defendants' likely motion for summary judgment, leaving Lead Plaintiff and the Class with no recovery at all.

### (2) The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing damages.  Here, Defendants argued that Lead Plaintiff had not adequately alleged (and could not prove) loss causation with respect to alleged misrepresentations concerning the phase 3 trials.  Boardman Decl., ¶84.  Defendants maintained that the failure of the phase 3 trials was due to factors unrelated to the changes Defendants made to the enrollment criteria as compared to the enrollment criteria for the phase 2b trial, and therefore, the alleged misrepresentations did not cause Lead Plaintiff and Class Members' losses when the failure of the phase 3 trials was announced.  *Id.*  Had litigation continued, Lead Plaintiff would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and *Daubert* challenges.  As courts have long recognized, the substantial uncertainty as to which side's experts' views might be credited by a

jury presents a serious litigation risk.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . ."). If the Court determined that one or more of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's case would become much more difficult to prove.

Thus, in light of the very significant risks Lead Plaintiff faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

### (3)   The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Litigation would be considerable.  *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement").  Indeed, if not for the Settlement, the Litigation, which has already been pending for more than five years, would have continued through the completion of fact and expert discovery.  The subsequent motion for summary judgment, as well as the preparation for what would likely be a multi-week trial, would have caused the action to persist for several more years before the Class could possibly receive any recovery.  Such a lengthy and highly uncertain process would not serve the best interests of the Class compared to the immediate, certain monetary benefits of the Settlement.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this

current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* factors, all weigh in favor of final approval.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement.  Pursuant to the Preliminary Approval Order, 55,701 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11-12, submitted herewith. Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶14. Class Members had until August 1, 2022 to object to the Settlement and have until August 18, 2022 to request exclusion from the Class.  While the exclusion date has not yet passed, there were no objections to the Settlement, and only two requests for exclusion have been received. *Id.*, ¶16.  Class Members had until July 6, 2022 to submit claim forms.  The claims process is similar to that typically used in securities class action settlements.  *See Christine Asia*, 2019 WL 5257534, at \*14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective").  This factor therefore supports final approval.

### e.      Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  Consistent with the Notice, and as discussed in Lead Counsel's fee memorandum, Lead Counsel seeks an award of attorneys' fees in the amount of 30% of the Settlement Amount, and expenses in the amount of $265,231.29, in addition to interest on both amounts, to be paid at the time of award.[3]

As set forth in Lead Counsel's fee memorandum, this request is in line with recent fee awards in this District in similar common-fund cases.

Lead Counsel's fee request is reasonable, and Lead Plaintiff has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments.  Accordingly, this factor supports final approval of the Settlement.

### f.      The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).  As previously disclosed in connection with Lead Plaintiff' motion for preliminary approval of the Settlement, ECF 128 at 12, the parties have entered into a supplemental agreement providing that, in the event that requests for exclusion from the Class exceed a certain agreed-upon threshold, Ophthotech has the option to terminate the Settlement.  As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger

---

[3]    The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an Order awarding such fees and expenses.  *See* Stipulation, ¶6.2; *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (finding the "quick-pay provision" did "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

individual settlement, to the detriment of the Class.  This agreement has no bearing on the fairness of

the Settlement, and as such, this factor weighs in favor of final approval.  *See Christine Asia*, 2019

WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action

settlements and ha[ve] no negative impact on the fairness of the Settlement").

### g.    The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably.  As

discussed further below in §IV, Lead Counsel developed the Plan of Allocation in consultation with

its damages expert to treat Class Members equitably relative to each other by: (i) taking into account

the timing of their Ophthotech purchases, acquisitions, and sales; and (ii) providing that each

Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on

their recognized losses.  Lead Plaintiff will be subject to the same formula for distribution of the Net

Settlement Fund as every other Class Member.  This factor therefore merits granting final approval

of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the

Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2.    The Settlement Satisfies the Remaining *Grinnell* Factors

### a.    The Lack of Objections Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor

to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL

4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'absence of objections may itself be taken as

evidencing the fairness of a settlement.'"  *City of Providence v. Aeropostale, Inc.*, 2014 WL

1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d

Cir. 2015).

The deadline to submit objections has passed and no objections were received. Only two requests for exclusion have been received. Murray Decl., ¶16. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelming positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

### b.   Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *Martignago v. Merrill Lynch & Co., Inc.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Unquestionably, Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement. As detailed in the Boardman Decl., Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation, opposing Defendants' motion to dismiss, reviewing over 2.8 million pages of documents produced by

Defendants and third parties, obtaining deposition testimony from three fact witnesses, conducting class certification discovery, and consulting with experts. Lead Plaintiff also participated in a hard-fought mediation session with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement. *Id.* During the mediation, Defendants' Counsel pressed the arguments raised in their motion to dismiss, in addition to further arguments they intended to make if the case were to progress. *Id.*

Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case. This factor weighs in favor of final approval.

### c.     Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Although Defendants did not oppose Lead Plaintiff's class certification motion, they could still have moved to decertify the class or trim the class period before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *See Christine Asia*, 2019 WL 5257534, at \*13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at \*5.

### d.     Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval. Even if Defendants could have withstood a greater judgment, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at \*7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at \*9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required

- 15 -

to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, though Ophthotech might be able to endure a larger judgment, all other factors favor final approval.

### e. The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause [Lead Plaintiff] face[s] serious challenges to establishing liability, consideration of [Lead Plaintiff's] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). The Settlement represents a recovery of approximately 9% of reasonably recoverable damages, Boardman Decl., ¶6, an amount that exceeds median recoveries in cases of this size. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2022),

https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.[4]

Moreover, the $29 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Lead Plaintiff faced.  *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real").  This factor weighs in favor of final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "'it must be fair and adequate.'"  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.  A plan of allocation that reimburse class members based on the relative strength and value of their claims is reasonable.  *IMAX*, 283 F.R.D. at 192.  However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as set forth in the Notice, the Plan was prepared with the assistance of Lead Plaintiff's damages expert and has a rational basis, as it is based on the same methodology underlying Lead Plaintiff's measure of damages: the amount of artificial inflation in the price of Ophthotech common

---

[4]    Not surprisingly, Defendants contended that damages were zero due to the absence of any liability and loss causation.

stock during the Class Period.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan. The Plan treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See id.*; *see also* Murray Decl., Ex. A (Notice) at 11.

Lead Plaintiff and Lead Counsel believe that the Plan is fair and reasonable, and respectfully submit that it should be approved by the Court.  Indeed, notably, there have been no objections to the Plan, which supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7.

## V.   THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim, could be issued.  *See* ECF 128 at 16-21.  In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Court found that Lead Plaintiff had met the requirements for certification of the Class for purposes of settlement.  ECF 137 at ¶¶2-3. Specifically, in the Preliminary Approval Order, the Court preliminarily certified a class of "all

- 18 -

Persons who purchased or acquired Ophthotech common stock during the period between March 2, 2015 through December 12, 2016, inclusive." *Id.*, ¶2.  In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as class counsel.  *Id.*, ¶4.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes.  Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and appoint Lead Plaintiff as Class Representative and Lead Counsel as class counsel.

## VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner."  Fed. R. Civ. P. 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy these standards.  The Court-approved Notice and Proof of Claim (the "Notice Packet") amply inform Class Members of, among other things: (i) the pendency of the Litigation; (ii) the nature of the

Litigation and the Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and nominees on April 7, 2022.  As of August 3, 2022, 55,701 copies of the Notice Packet have been mailed.  Murray Decl., ¶11.  Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*.  *Id.*, ¶12, Ex. C. Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement.  *Id.*, ¶14.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet

newswire, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at \*3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'").  Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Christine Asia*, 2019 WL 5257534, at \*16 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.   CONCLUSION

The $29 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a substantial recovery for the Class, particularly in light of the significant litigation risks Lead Plaintiff faced, including the very real risk of the Class receiving no recovery at all.  For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan as fair, reasonable, and adequate.

DATED:  August 4, 2022     Respectfully submitted,

          ROBBINS GELLER RUDMAN
           & DOWD LLP
          DAVID A. ROSENFELD
          ERIN W. BOARDMAN
          CHRISTOPHER T. GILROY
          PHILIP T. MERENDA


            s/ Erin W. Boardman
           ERIN W. BOARDMAN

- 21 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
cgilroy@rgrdlaw.com
pmerenda@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I, Erin W. Boardman, hereby certify that on August 4, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*s/ Erin W. Boardman*

ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com