UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

FRANK MICHOLLE, Individually and on     :     Civil Action No. 1:17-cv-00210-VSB-GWG
Behalf of All Others Similarly Situated,         :     **(Consolidated)**
                                                                    :
                              Lead Plaintiff,         :     <u>CLASS ACTION</u>
                                                                    :
          vs.                                                  :
                                                                    :
OPHTHOTECH CORPORATION, DAVID R.     :
GUYER and SAMIR PATEL,                         :
                                                                    :
                              Defendants.             :
                                                                    :
———————————————————— x

MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................1

II.    HISTORY AND BACKGROUND OF THE LITIGATION..............................................3

III.    ARGUMENT ...............................................................................................3

    A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund..........................................................................3

    B.    The Court Should Award a Reasonable Percentage of the Common Fund............4

    C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method.............................................................................7

    D.    The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied...........8

    E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable .................12

        1.    The Time and Labor Expended by Counsel ...............................................12

        2.    The Risks of the Litigation .......................................................13

        3.    The Magnitude and Complexity of the Litigation .....................................17

        4.    The Quality of Representation Supports the Requested Fee ....................18

        5.    Public Policy Considerations ...................................................19

        6.    The Class's Reaction to the Fee Request to Date Supports the Requested Fee ................................................................19

IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION................................20

V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4) ......................................................................21

VI.    CONCLUSION.............................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .........................................................................15

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) .......................................................13

*Athale v. Sinotech Energy Ltd., et al.*,
   2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ....................................................10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ..............................................................................................4

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..........................................................................................5, 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..............................................................................................3

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) ..............................................................................6

*Chatelain v. Prudential-Bache Sec. Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) .....................................................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...............................................10, 17

*Citiline Holdings, Inc. v. iStar Fin. Inc., et al.*,
   No. 1:08-cv-03612-RJS, slip op.,
   (S.D.N.Y. Apr. 5, 2013) ........................................................................................8

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015) .....................................................8

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73
   (2d Cir. 2015).......................................................................................3, 5, 8, 18

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*,
   2021 WL 2736135 (S.D.N.Y. June 30, 2021) ....................................................21

**Page**

*Cornwell v. Credit Suisse Grp., et al.*,
  2011 WL 13263367 (S.D.N.Y. July 20, 2011) ........................................................................10

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................................5, 10

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...............................................................................................14

*Emerson v. Mutual Fund Series Trust, et al.*,
  No. 2:17-cv-02565-SJF-SIL, slip op.
  (E.D.N.Y. Sept. 9, 2020) .....................................................................................................21

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ...........................................................................................6

*Fleming v. Impax Laboratories Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................................9

*Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*,
  925 F.3d 63 (2d Cir. 2019),
  *cert denied*, __U.S.__, 140 S. Ct. 385 (2019) ...........................................................3, 4, 6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................... *passim*

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...............................................................................................6

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ...........................................................................................4

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................................4, 22

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...........................................................................................15

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................................6, 14

*In re Amaranth Nat. Gas Commodities Litig.*,
  2012 WL 2149094 (S.D.N.Y. June 11, 2012) ......................................................................8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................................17

**Page**

*In re Bayer AG Sec. Litig.*,
   2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .........................................................................17

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ....................................................................7, 10

*In re Bisys Sec. Litig.*,
   2007 WL 2049726 (S.D.N.Y. July 16, 2007) .........................................................................18

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................20

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)..................................................................................7, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ....................................................................9, 13

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..............................................................................................14

*In re Deutsche Bank AG Sec. Litig.*,
   2020 WL 3162980 (S.D.N.Y. June 11, 2020) .........................................................................7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x 37 (2d Cir. 2016).....................................................................................8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................... *passim*

*In re Genworth Fin. Inc. Sec. Litig.*,
   No. 1:14-cv-02392-AKH, slip op.
   (S.D.N.Y. Nov. 16, 2017) .....................................................................................................7

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................6, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).....................................................................................................5

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)....................................................................................11, 17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................................20

Page

*In re Interpublic Sec. Litig.*,
    2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...........................................................4

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019)............................................................7

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ........................................................15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................15, 18

*In re Nielsen Holding Plc Sec. Litig.*,
    No. 1:18-cv-07143-JMF, slip op.
    (S.D.N.Y. July 21, 2022) .....................................................................................21

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010) ......................................................................15

*In re Parking Heaters*,
    2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)............................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997)..........................................................................14

*In re Qudian Inc. Sec. Litig.*,
    2021 WL 2328437 (S.D.N.Y. June 8, 2021) ..........................................................21

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)...................................................................................20

*In re Sadia S.A. Sec. Litig.*,
    2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) .........................................................14

*In re Thirteen Appeals Arising out of the San Juan
    Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295, 305 (1st Cir. 1995).............................................................................5

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................3, 10, 13

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...........................................3, 6, 19, 22

Page

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964).............................................................................................4

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996) ...............................................................................6

*Lopez v. Fashion Nova*,
    2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ....................................................10

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................6, 11, 19

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)........................................................................................7, 9

*Nichols v. Noom, Inc.*,
    2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..............................................4, 5, 7

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...........................................................................6

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) .................................................................................6

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................15

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)...............................................................................5

*Spicer v. Pier Sixty LLC*,
    2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012)..................................................10

*Strougo v. Barclays PLC, et al.*,
    No. 1:14-cv-05797-VM-DCF, slip op.
    (S.D.N.Y. June 3, 2019).....................................................................................7

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993).............................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..............................................14, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .............................................................................6

**Page**

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...........................................................................4, 5, 10

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................................19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(4).........................................................................................1, 2, 21
   §78u-4(a)(6).................................................................................................6

Lead Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses in connection with its representation of the Class in the above-captioned litigation, and for an award to Lead Plaintiff Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada ("Lead Plaintiff") in connection with its representation of the Class.

## I.   INTRODUCTION

After more than four years of hard-fought litigation, Lead Counsel secured a $29,000,000 settlement for the benefit of the Class.  The Settlement is a very good result for the Class given the serious obstacles to recovery, the numerous credible defenses to liability and damages that Defendants have articulated, the fact that the Court might have accepted Defendants' arguments at summary judgment following the completion of fact and expert discovery, and the recovery relative to the amount of estimated recoverable damages suffered by the Class.[1]  To obtain this Settlement, Lead Plaintiff and Lead Counsel overcame a number of significant challenges that existed from the filing of the initial complaint.  In recognition of these risks and the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of 30% of the Settlement Amount, and $265,231.29 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts.  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See*

---

[1]   Capitalized terms used herein are defined and have the meanings contained in the Stipulation of Settlement (ECF 129) (the "Stipulation"), the accompanying Declaration of Erin W. Boardman in Support of:  (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Boardman Declaration"), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In addition, Lead Plaintiff seeks a modest award of $5,022.80 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its time and unreimbursed expenses incurred in its representation of the Class.

This fee request has the full support of Lead Plaintiff.  *See* Declaration of Vernon Shaffer in Support of Lead Plaintiff's Motion for Final Approval of Settlement, ¶5, submitted herewith ("Lead Plaintiff Declaration").  In addition, following an extensive Court-ordered notice program in which 55,701 Notices have been mailed to potential Class Members, to date not a single Class Member has objected to the requested fees or the expenses (not to exceed $500,000, as set forth in the Notice).

As detailed below, in the Boardman Declaration, and in the Settlement Memorandum, the Settlement achieved here represents a very good result for Lead Plaintiff and the Class, particularly when judged in the context of the significant litigation risks in this Action.  The $29 million Settlement that Lead Counsel obtained provides the Class with an immediate and certain recovery in a case that faced significant risks.  In achieving this result, Lead Counsel worked more than 9,800 hours over the course of more than four years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorney fee award of 30%, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel in prosecuting the Action, as well as the result achieved.  When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 30% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the expenses requested by Lead Counsel are reasonable in amount and were necessarily incurred, and the request by Lead Plaintiff adequately reflects its efforts and contributions to the Litigation.

## II.      HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and Lead Counsel's prosecution of this case (including key pleadings, motions, and mediation efforts) is set forth in the accompanying Boardman Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.     ARGUMENT

### A.      Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert denied*, __U.S.__, 140 S. Ct. 385 (2019).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2.  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a

necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S.

299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent.  *See In re Interpublic Sec.*

*Litig.*, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an

attorney creates a common fund from which members of a class are compensated for a common

injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be

taken from the fund.'"); *Fresno Cnty.*, 925 F.3d at 68.  Fairly compensating Lead Counsel for the

risks it took in bringing this Action is essential because "[s]uch actions could not be sustained if

plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on

behalf of the class."  *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.     The Court Should Award a Reasonable Percentage of the Common Fund

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of

the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under

which counsel is awarded a percentage of the fund that they created, is the preferred means to

determine a fee because it "'directly aligns the interests of the class and its counsel and provides a

powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining*

*Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a

percentage fee award from a common settlement fund, as here, aligns the interests of class counsel

with those of the class."); *see also Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July

12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the

interests of the class and its counsel and provides a powerful incentive for the efficient prosecution

and early resolution of litigation.'") (citing *In re Parking Heaters*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019)).  The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[2]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").  The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").  Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method."  *Wal-Mart Stores*, 396 F.3d at 121; *see also Noom*, 2022 WL 2705354; *City of Providence*, 2014 WL 1883494, at *11-*12.[3]

---

[2]   *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[3]   All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common-fund cases.  *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up*

Recently, the Second Circuit reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 63. In *Fresno*, the Second Circuit confirmed the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases. *Id.* at 72.

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

---

*Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common-fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

**C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). An "'ideal proxy' for the award should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for legal services would agree." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014). If this were a non-class action, the customary fee arrangement would be contingent and in the range of 33% of the recovery. *See Blum*, 465 U.S. at 903 ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'") (Brennan, J., concurring).

Here, the Court does not need an "ideal proxy" for what counsel would receive if they were bargaining for their services in the marketplace, because Lead Plaintiff supports the requested fee percentage. *See* Lead Plaintiff Decl., ¶5. Moreover, the requested 30% fee is well within the range of percentage fees awarded by courts within the Second Circuit in other comparable complex cases. *See, e.g.*, *Noom*, 2022 WL 2705354, at *10 (awarding fee of one-third of $56 million settlement fund, finding "[]fee equal to one-third of a settlement fund is routinely approved in this Circuit"); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding one-third of $18.5 million settlement, plus expenses); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of $75 million recovery); *Strougo v. Barclays PLC, et al.*, No. 1:14-cv-05797-VM-DCF, slip op. at ¶15, ECF 146 (S.D.N.Y. June 3, 2019) (awarding 33% of $27 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 30% of $50 million recovery, plus expenses); *In re Genworth Fin. Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. at ¶3, ECF 178

(S.D.N.Y. Nov. 16, 2017) (awarding 30% of $29 million recovery, plus expenses); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding fees of 30% of $33 million recovery, plus expenses); *In re Amaranth Nat. Gas Commodities Litig.*, 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (awarding 30% of $77.1 million antitrust class action settlement and noting among other things, that the fee is "close to the standard range of fee awards given under *Goldberger*"); *Citiline Holdings, Inc. v. iStar Fin. Inc., et al.*, No. 1:08-cv-03612-RJS, slip op. at ¶3, ECF 127 (S.D.N.Y. Apr. 5, 2013) (awarding fees of 30% of $29 million recovery, plus expenses).[4]

### D.    The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied

When using the percentage-of-the-fund method, courts can also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353. When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar method requires a two-part analysis: "first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence*, 2014 WL 1883494, at *13. Performing the lodestar

---

[4]    All unreported authorities are attached hereto as Exhibits A-E.

calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and its paraprofessionals have spent, in the aggregate, 9,827.05 hours in the prosecution of this case, producing a total lodestar amount of $6,209,956.00 when multiplied by counsel's billing rates. *See* accompanying Declaration of Erin W. Boardman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Decl.").[5] The amount of attorneys' fees requested by Lead Counsel herein, $8.7 million, represents a slight multiplier of 1.4 to counsel's aggregate lodestar.[6]

In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel

---

[5]    In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  Here, the lawyers and paraprofessionals are experienced securities practitioners with track records of success, and among the most prominent and well-regarded securities practitioners in the nation.  Lead Counsel's billing rates are reasonable and have recently been judicially approved. *Fleming v. Impax Laboratories Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) ("The Court finds [Robbins Geller's] billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); Hr'g Tr. at 160:22-24, *In re Amer. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH) (S.D.N.Y. Jan. 23, 2019) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable.") (Exhibit F hereto); Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 09-cv-01714 (GHW) (RWL) (S.D.N.Y. June 11, 2020) ("I find that these billable rates [for Robbins Geller] based on the timekeeper's title, specific years of experience, and market rates for similar professionals in their fields . . . to be reasonable in this context.") (Ex. G hereto).

[6]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess

of the lodestar.").

The multiplier of 1.4 reflected here falls within the range of multipliers found reasonable for

cross-check purposes by courts in this Circuit and elsewhere, and is fully justified here given the

effort required, the risks faced and overcome, and the results achieved.  Indeed, "'[i]n contingent

litigation, lodestar multipliers of over 4 are routinely awarded by courts[.]'"  *Spicer v. Pier Sixty*

*LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (quoting *Telik*, 576 F. Supp. 2d at 590);

*see also Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit,

'[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases,

even higher multipliers.'"); *Wal-Mart Stores*, 396 F.3d at 123 (upholding multiplier of 3.5);

*Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (awarding

fee representing a 2.15 multiplier, which court found to be "well within the range commonly

awarded in securities class actions of this complexity and magnitude"); *BHP Billiton*, 2019 WL

1577313, at *1-*2 (awarding fee representing 2.7 multiplier); *Athale v. Sinotech Energy Ltd., et al.*,

2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65, finding it "not

unreasonable under the particular facts of this case" and "sufficient to compensate counsel for the

work they have put in and the risks they took, as well as to reward them for zealously litigating the

dispute and timely resolving the action'"); *Cornwell v. Credit Suisse Grp., et al.*, 2011 WL

13263367, at *2 (S.D.N.Y. July 20, 2011) (awarding fee representing a multiplier of 4.7); *Davis*, 827

F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar

cases); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are

routinely awarded by courts, including this Court.").

In *Maley*, after almost one year of litigation, the parties reached a "relatively quick settlement" prior to the commencement of extensive discovery. *See Maley*, 186 F. Supp. 2d at 363-64. In awarding a fee of 33-1/3% that resulted in a lodestar cross-check multiplier of 4.65, the court held that "[i]n the context of a complex class action, early settlement has far reaching benefits in the judicial system." *Id.* at 373. The court held that the multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country." *Id.* at 369. Here, while shouldering the risk of non-recovery, Lead Counsel litigated this case on a contingency basis for four years. Accordingly, the lodestar multiplier here is well within the range awarded by courts in this Circuit, and thus Lead Counsel's fee is reasonable when the cross-check is performed.

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Lead Counsel invested substantial time and effort prosecuting this Action against the Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

As detailed in the Boardman Declaration, based on its efforts in litigating this case and producing an excellent result, Lead Counsel believes the requested fee, whether calculated as a percentage of the fund or in relation to counsel's lodestar, is manifestly reasonable. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E. The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1. The Time and Labor Expended by Counsel

Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation commenced more than four years ago, Lead Counsel and its paraprofessionals devoted in excess of 9,800 hours to prosecuting the Class's claims.  As detailed in the Boardman Declaration, submitted herewith, Lead Counsel, among other things:

- conducted an extensive factual investigation into the underlying facts;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted a detailed amended complaint;

- briefed Defendants' motion to dismiss;

- conducted comprehensive fact discovery, including the review and analysis of over 2.8 million pages of documents produced by Defendants and third parties, and the taking of three depositions;

- moved for class certification;

- consulted industry and damages experts;

- participated in lengthy arm's-length settlement negotiations, including a mediation with the Hon. Layn R. Phillips (Ret.) and follow-up negotiations with the assistance of Judge Phillips; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally* Boardman Decl.

Moreover, Lead Counsel, with the assistance of its damages expert, prepared the proposed Plan of Allocation based primarily on an analysis estimating the amount of artificial inflation in the price of Ophthotech common stock during the Class Period.  Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Additional hours and resources will necessarily be expended assisting Members of the Class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries.  *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).  The significant amount of time and effort devoted to this case by Lead Counsel to obtain a $29 million recovery – work that will not end with the Court's approval of the Settlement – confirms that the 30% fee request is reasonable.

### 2.     The Risks of the Litigation

#### a.     The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor.  *Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592.  The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated

cases producing large recoveries, is it just to make a fee depend solely on the
reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  "Little about litigation is risk-free, and

class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys.*

*of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F.

Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in

determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F.

Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent

fee risk is an important factor in determining the fee award.").  This risk encompasses not just the

risk of no payment, but also the risk of underpayment.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566,

569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among

other things, risk of underpayment to counsel).  When considering the reasonableness of attorneys'

fees in a contingency action, the court should consider the risks of the litigation at the time the suit

was brought.  *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3

(S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this Litigation on a wholly contingent-fee basis, investing a

substantial amount of time and money to prosecute a risky action with no guarantee of compensation

or even the recovery of expenses.  Unlike Defendants' counsel, who are paid substantial hourly rates

and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for

any time or expenses since this case began in January 2017, and would have received no

compensation or payment of its expenses had this case not been resolved successfully.

From the outset, Lead Counsel understood that it was embarking on a complex, expensive,

and lengthy litigation with no guarantee of ever being compensated for investing the time and money

the case would require.  In undertaking that responsibility, Lead Counsel was obligated to assure that

sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs that a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees at all. Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed at summary judgment or following trial.[7]

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive. Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

---

[7]   Moreover, it is wrong to presume that a law firm handling complex contingent litigation always wins. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite their diligence and expertise. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

### b.      Risks of Establishing Liability

While Lead Plaintiff remains confident in its claims, its ability to prove liability was far from certain.  As detailed in the Boardman Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the falsity of the misstatements and omissions alleged, whether they were made with scienter, and loss causation.   Boardman Decl., ¶¶25-26.   More specifically, Defendants argued that Lead Plaintiff has not alleged any actionable material misstatements or omissions, because:  (i) Defendants adequately disclosed the change to requiring SHRM in the phase 3 trials; and (ii) the change was not "meaningful" because it did not have the effect of making occult patients eligible for the phase 3 trials, and did not increase the risk that the phase 3 trials would fail. *Id.*, ¶25.  Defendants further maintained that Lead Plaintiff has not sufficiently alleged Defendants' scienter, because it could not establish that Defendants knew or had access to information inconsistent with their public statements. *Id.*, ¶26.  Defendants further argued that Lead Plaintiff's motive allegations failed because Guyer's and Patel's stock sales were consistent with their prior trading patterns and were made pursuant to Rule 10b5-1 trading plans. *Id.*  Although some of Lead Plaintiff's claims survived Defendants' motion to dismiss, the Court did grant the motion with respect to Lead Plaintiff's allegations that Defendants made materially false and misleading statements about the results of the phase 2b trial.  The surviving claims would no doubt be challenged again on summary judgment.  Therefore, whether Lead Plaintiff ultimately would prove liability was far from assured.

### c.      Risk of Establishing Causation and Damages

With respect to proving causation and damages, Defendants would continue to attack the causal link between Defendants' alleged misstatements about the phase 3 trials and Lead Plaintiff's losses as well as the damages calculations of Lead Counsel's expert which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered.  Defendants

would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how the Court or a jury would decide these issues. The damage assessments of the parties' respective trial experts would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that the Court or a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 3.    The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia*, 2019 WL 5257534, at *18 ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'"). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described herein, this Litigation involved a number of difficult and complex questions concerning liability and damages

that required, and would have continued to require, extensive efforts by Lead Counsel and consultation with experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 30% fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at §III.C.; *see also FLAG Telecom*, 2010 WL 4537550, at *28; *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Lead Counsel are experienced securities class action and complex litigation practitioners. *See* Robbins Geller Decl., Ex. E. This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation. *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Lead Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of

attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Wilmer Cutler Pickering Hale and Dorr LLP and Morgan, Lewis & Bockius LLP, who presented very skilled defenses and spared no effort in representing their clients.  Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.      Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").  Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 6.      The Class's Reaction to the Fee Request to Date Supports the Requested Fee

To date, the Claims Administrator has sent 55,701 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, plus

expenses not to exceed $500,000, plus interest on both amounts.[8]   The time to object to the fee

request expired on August 1, 2022.   Not a single objection to the fee and expense amounts set forth

in the Notice was received.   Such a "low level of objection is a 'rare phenomenon.'"   *In re Rite Aid

Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).   The fact that no objections were received

supports the fairness of the fee request.

Additionally, Lead Plaintiff supports the fee request.   Lead Plaintiff Decl., ¶5.   Lead Plaintiff

played an active role in the Litigation and closely supervised the work of Lead Counsel.

## IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $265,231.29 in expenses incurred while

prosecuting the Litigation.   Lead Counsel has submitted a declaration regarding these expenses,

which are properly recovered by counsel.   *See* Robbins Geller Decl., ¶¶5-6.   *See, e.g.*, *In re China

Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys

should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to

their clients, as long as they were "incidental and necessary to the representation"'"); *FLAG

Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are

entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy

Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate

class counsel for reasonable expenses necessary to the representation of the class).

Counsel's expenses include, for example, the costs of hiring experts to assist in their efforts,

consultants, travel, document database management and storage, mediating the Class's claims, and

computerized research.   A complete breakdown by category of the expenses incurred is set forth in

---

[8]   *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication,
and Requests for Exclusion Received to Date ("Murray Decl."), Ex. A. (Notice).

the accompanying Robbins Geller Declaration.  These expenses were critical to Lead Counsel's success in achieving the Settlement.  *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").  Not a single objection to the expense amount set forth in the Notice was received. Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff seeks approval of an award of $5,022.80 in time and expenses incurred in representing the Class.[9]  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  Many courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class. *See, e.g.*, *In re Nielsen Holding Plc Sec. Litig.*, No. 1:18-cv-07143-JMF, slip op. at ¶¶7-8, ECF 156 (S.D.N.Y. July 21, 2022) (awarding $17,750 and $5,625 to plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.70 to lead plaintiff); *Emerson v. Mutual Fund Series Trust, et al.*, No. 2:17-cv-02565-SJF-SIL, slip op. at ¶8, ECF 109 (E.D.N.Y. Sept. 9, 2020) (approving awards to lead plaintiffs of amounts between $1,500 and $5,800 "related to their representation of the class").

---

[9]   This amount represents $3,308.75 in unreimbursed expenses and $1,714.05 for Mr. Shaffer's time.  Lead Plaintiff Declaration, ¶6.

As set forth in the Lead Plaintiff Declaration, Lead Plaintiff took an active role in prosecuting the Litigation, including: (1) communicating with Lead Counsel on issues and developments in the Litigation; (2) reviewing documents filed in the case; (3) consulting with Lead Counsel on litigation and settlement strategy; and (4) reviewing and approving the proposed Settlement.  Lead Plaintiff Decl., ¶3.

These are precisely the types of activities courts have found support PSLRA awards to class representatives.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

The Notice informed potential Class Members that Lead Plaintiff may seek approval for up to $7,500 for its time and expenses incurred in representing the Class.  Murray Decl., Ex. A (Notice) at 7.  The time and expenses requested, $5,022.80, is well below that amount.  To date, no Class Member has objected to such award.  Accordingly, Lead Plaintiff's request is reasonable and fully justified under the PSLRA and should be granted.

## VI.    CONCLUSION

Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 30% of the Settlement Amount, plus expenses in the amount of $265,231.29, plus interest on both amounts, and $5,022.80 to Lead Plaintiff, as permitted by the PSLRA.

DATED: August 4, 2022          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID A. ROSENFELD
ERIN W. BOARDMAN
CHRISTOPHER T. GILROY
PHILIP T. MERENDA

_____
           s/ Erin W. Boardman
ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
cgilroy@rgrdlaw.com
pmerenda@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Lead Plaintiff

## CERTIFICATE OF SERVICE

I, Erin W. Boardman, hereby certify that on August 4, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*s/ Erin W. Boardman*
ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com